### Richard RISPOLI and Rita Rispoli, Plaintiffs,

v.

### UNITED STATES of America and Veterans Administration, Defendants.

### No. 79 C 1367.

United States District Court, E.D. New York.

Dec. 22, 1983.

Jeffrey Peters, Peters, Berger & Koshel,
P.C., Brooklyn, N.Y., for plaintiffs.

Raymond J. Dearie, U.S. Atty., E.D.N.Y. by Rodger C. Field, Asst. U.S. Atty., Brooklyn, N.Y., for defendants.

## MEMORANDUM AND ORDER

PLATT, District Judge.

Richard Rispoli, a Korean War veteran, brought this action against the United States of America under the Federal Tort Claims Act (FTCA). He seeks to recover for malpractice allegedly committed while he was an inpatient at the Brooklyn Veterans Administration Hospital. His wife, Rita. Rispoli, filed a derivative claim for loss of services. The government brought this Rule 56 motion for summary judgment on the grounds that plaintiffs' actions are barred by the FTCA, which prohibits a tort claim against the United States unless it is presented "within two years after such claim accrues." 28 U.S.C. § 2401(b). It also seeks to dismiss Mrs. Rispoli's derivative claim on the additional ground that she failed to file a properly substantiated administrative claim. For the reasons stated below, we deny the government's motion for summary judgment and, as the trier of fact in this action, find that the Rispoli claims are not barred by the time limitations imposed by the FTCA but grant its motion to dismiss Mrs. Rispoli's claim.

### Background

On October 7, 1983, this Court held a hearing in connection with this motion. On the basis of that testimony, as well as all other testimony thus far elicited in this proceeding, we find the following.

In October 1974, Mr. Richard Rispoli was selling hotdogs from a stand in Brooklyn when an automobile rammed into him, pinning his leg and crushing it. He was rushed to Maimonides Hospital where he remained for a month while the doctors treated his leg. His femoral artery, which had been severed in the accident, was repaired and his leg, which suffered from open wounds and from which the skin had been ripped off, was treated for severe infection. Amputation of his leg was neither recommended nor discussed.

On November 11, 1974, Mr. Rispoli was transferred to the Brooklyn Veterans Administration Hospital where he remained an inpatient for five years. The doctors at the V.A. Hospital continued treatment of the open wound and recommended amputation. Mr. Rispoli refused to consent to the amputation of his leg.

Mr. Rispoli was then referred to the Hospital's Plastic Surgery Unit. He was treated, among others, by Dr. Kaufman and Kaufman's superior, Dr. Song. They performed a number of plastic surgical procedures—including skin grafts and flap advancement procedures—in an attempt to close his open leg wound. In October 1975, the physicians decided to perform an abdominal flap procedure and Mr. Rispoli agreed, knowing that it would be painful and there might be complications. In this procedure, ranging from October 1975 to January 1976, Mr. Rispoli's arm was attached to his abdomen for a few weeks and then disconnected and sewn to his right leg for another few weeks to obtain a successful skin graft. This procedure was done by using a "pretzel cast"—so named because of the contorted positions in which the patient is placed.

Mr. Rispoli was in great pain during this procedure and complained that his cast was too tight and hurt him. At Dr. Song's direction, portions of the cast were removed. He also complained to Dr. Song about Dr. Kaufman's treatment of him and was given assurances and told not to worry, that Dr. Kaufman was young but all right, and that Dr. Song would talk to Dr. Kaufman. It is this Court's conclusion that plaintiff's complaints about Dr. Kaufman made during this time period were directed to Dr. Kaufman's bedside manner, which was gruff, unsympathetic and abrasive.

These "casting procedures" form the basis of Mr. Rispoli's malpractice claim. He testified that when the cast was removed in January 1976, the wound on his leg was successfully covered up but the heel and the top of his foot had come off completely. Dr. Song advised him that the open wounds would be treated with wet dressings and would heal. Eventually, when the condi-

tion did not heal, plaintiff was treated by many operative procedures. In addition, in late 1976, plaintiff had begun to experience numbness and loss of feeling in the fingers of his right hand.

According to the record, Mr. Rispoli wrote the hospital on January 10, 1977 and February 4, 1977 regarding his flap procedure treatment. His complaints about Dr. Kaufman in the January 10, 1977 letter, which was read into the plaintiff's deposition testimony, clearly reflect his belief that Dr. Kaufman was mistreating him as a human being and not that the medical treatment was inadequate. In a March 3, 1977 letter written by Dorothy H. Henneman, M.D., one of the doctors who saw Mr. Rispoli in response to the letters he had written, this conclusion is supported by Dr. Henneman's own observations that Mr. Rispoli was aware that the hospitals' "physicians had indeed 'saved his life,' and that patient would consider writing a letter to that effect," and "patient has received good care and realizes this." (Plaintiff's Exhibit 1). The letter makes it clear that Mr. Rispoli's criticism, at this time, was with Dr. Kaufman's inadequate bedside manner.

In late 1977, after several unsuccessful operations to close the open wounds on his foot, Mr. Rispoli went to see an outside plastic surgeon when he was away from the hospital on a weekend pass. On April 13, 1978, the V.A. received plaintiff's administrative claim seeking $5 million damages. It was accompanied by an affidavit of his wife, Rita, seeking an unspecified amount of damages for "loss of services."

In this motion the government contends that Mr. Rispoli's action is barred by the time limitations imposed by the FTCA. 28 U.S.C. § 2401(b). Further, the government asserts that Mrs. Rispoli's claim, as a derivative action, must be dismissed because it is time barred and because she failed to file a timely substantiated claim. The government also maintains that plaintiffs' complaint against defendant Veterans Administration must be dismissed because, pursuant to the FTCA, suit may only be brought against the United States of America and not the government's agencies *eo nomine*.

## Discussion

It is fundamental law that the United States is immune from suit unless it has consented to be sued. *United States v. Kubrick*, 444 U.S. 111, 117–18, 100 S.Ct. 352, 357, 62 L.Ed.2d 259, 267 (1979). While lawsuits of the type presented here are permitted against the United States by the Federal Tort Claims Act, the FTCA limits possible claims by providing that "[a] tort claim against the United States shall be forever barred unless presented in writing to the appropriate federal agency within two years after such claim accrues ..." 28 U.S.C. § 2401(b). In this case, the government contends that Mr. Rispoli's claim is time barred by the FTCA because he did not file within two years after the claim accrued. The crucial issue, therefore, is a determination of when Mr. Rispoli's claim accrued.

The general tort rule is that a claim accrues at the time of injury. *Davis v. United States*, 642 F.2d 328, 330 (9th Cir.1981). The emerging medical malpractice rule, however, is that the claim does not accrue until the plaintiff is aware that the defendant has acted wrongfully. *See* Restatement Torts 2d § 899 comment (e) (1979). Nevertheless, where the FTCA is involved, federal rather than state law governs the determination of when a claim accrues. *Ciccarone v. United States*, 486 F.2d 253, 256 (3d Cir.1973); *Mendiola v. United States*, 401 F.2d 695, 697 (5th Cir. 1968). In *United States v. Kubrick, supra*, the Supreme Court formulated the federal rule for determining when a medical malpractice claim accrues under the FTCA. The Court held that a claim accrues when the claimant has discovered or, in the exercise of reasonable diligence, should have discovered, the existence, permanence and physical cause of the injury, regardless of whether he believes he has an actionable claim. *Kubrick*, 444 U.S. at 124, 100 S.Ct. at 360, 62 L.Ed. at 270–71. In other words, a claim accrues when a claimant is "armed with the facts" of both the existence of his injury and its causation sufficient to alert him that a basis for

investigating the possibility of malpractice exists. *Id.* at 123–24, 100 S.Ct. at 360, 62 L.Ed. at 270.

In this case, in order for plaintiffs' claims to be considered timely under the FTCA's two year provision, they must not have accrued earlier than April 13, 1976, since the administrative claim was received by the V.A. on April 13, 1978. Although both parties acknowledge that *Kubrick* governs the determination of when plaintiffs' claims accrued, they differ drastically as to its application. Mr. Rispoli asserts that he formed an opinion as to negligence in early 1978 (Rispoli Affidavit page 2), and the government maintains that the claim accrued, at the least, on January 12, 1976.

 In support of its position, the government points to certain portions of Mr. Rispoli's deposition testimony and response to interrogatories and suggests that these statements demonstrate that he knew of the injuries that form the basis of his claim and their cause in December 1975— January 1976. The testimony shows that Mr. Rispoli was in pain and complained of his care and treatment during this time frame. However, this Court rejects the government's contention that this demonstrates he was "armed with facts" sufficient to impose the *Kubrick* obligation. When the testimony is read in context with all of Mr. Rispoli's testimony, it is clear that his complaints as to the treatment he was receiving were not directed to the level of medical care, as suggested by the government, but rather to Dr. Kaufman's abusive bedside manner. A patient's complaint about a doctor's bedside manner is insufficient to mark the accrual of a patient's claim of malpractice. *DeWitt v. United States,* 593 F.2d 276 (7th Cir.1979). Such a finding is further supported where, such as here, a superior doctor—Dr. Song—assures a patient that the medical treatment being delivered by a doctor—Dr. Kaufman—is satisfactory even though his bedside manner is not.

 *Kubrick* requires both knowledge of an injury and its cause. This Court concludes that Mr. Rispoli did not have knowledge of the alleged injury during the time frame suggested by the government. Clearly, when the cast was removed in January 1976, Mr. Rispoli was aware that his heel and parts of his foot were missing. However, in this case, this awareness does not constitute knowledge of an injury. Prior to undertaking the flap procedure, and during the procedure, Mr. Rispoli was told that he could expect severe pain and complications. Indeed, he testified that, because of these warnings, he expected such complications and was not alarmed when they occurred. Furthermore, Dr. Song assured him that the open wounds remaining on his foot when the cast was removed would be treated and would heal. A plaintiff should not be deemed "armed with the critical facts" where (1) he knows a procedure normally involves the type of results that also could be considered signs of malpractice; and (2) he is assured by his doctor that his pain and unseemly side-effects are normal given the nature of the treatment.

Having rejected the government's suggested time of accrual, there remains the question of when Mr. Rispoli's claim accrued and whether his claim is timely made within the meaning of the FTCA. As stated earlier, in order for Mr. Rispoli's claim to be timely, his cause of action must have accrued on or after April 13, 1976. The pivotal issue, therefore, becomes whether Mr. Rispoli had knowledge of his injury prior to April 13, 1976.

 As we have noted, Mr. Rispoli had been warned that the flap procedure would be accompanied by severe pain and complications. Accordingly, he was not necessarily alarmed when the cast was removed in January 1976. In fact, he testified that he had been told to expect the results that occurred. In addition, as we have also noted, Dr. Song assured him that his foot would be treated and would heal. After treatment was unsuccessful, Mr. Rispoli underwent several operations during 1976 and 1977 in an attempt to close the wound. Under these circumstances, it is reasonable to conclude that it was not until after surgery was unsuccessful that Mr. Rispoli should have developed knowledge that an

injury existed. Where a patient has been told that complications will arise and, when they do arise, is told further that they can be treated, he cannot be deemed to have knowledge of an injury. In such circumstances, he can only be deemed to have knowledge after a sufficient period of time has passed so as to alert him that the treatment is unsuccessful. In this case, it is unnecessary specifically to determine what constitutes a sufficient period of time since it is reasonable to conclude that here this period of time fell sometime after April 1976. Since this conclusion renders Mr. Rispoli's claim timely, it is unnecessary to determine exactly when his claim accrued. This Court simply finds that Mr. Rispoli's claim accrued sometime after April 1976.

The government further contends that Mrs. Rispoli's claim should be dismissed. Inasmuch as Mr. Rispoli's claim has been found timely, Mrs. Rispoli's claim, as a derivative action, must also be found timely. However, the government also contends that Mrs. Rispoli's claim must be dismissed because she failed to file a properly substantiated claim. We agree.

Mrs. Rispoli asserted her claim for loss of services against the government by submitting an affidavit with Mr. Rispoli's administrative claim. The affidavit did not specify a sum certain in damages sought. The District Counsel of the Veterans Administration wrote the plaintiffs' attorneys on May 3, 1978 and informed them that "[t]he affidavit cannot be accepted as a claim under the Federal Tort Claims Act at this time since it does not set forth the amount she seeks to recover" (Government's Motion for Summary Judgment Exhibit D) and enclosed two blank claim forms. They were not returned to the District Counsel and, prior to the institution of this litigation, Mrs. Rispoli did not state the amount of damages which she sought for loss of services.

The government asserts that Mrs. Rispoli failed to document her claim and specify a sum certain and that her claim should, therefore, be dismissed. Mrs. Rispoli asserts that the affidavit she submitted with Mr. Rispoli's claim served to incorporate the derivative claim into Mr. Rispoli's claim which demanded total damages in the sum of $5 million.

Adherence to the statutory procedure for asserting a claim against the sovereign is a jurisdictional prerequisite to the benefit of the sovereign waiver of its immunity. *Molinar v. United States*, 515 F.2d 246, 249 (5th Cir.1975). A claimant must exhaust his or her administrative remedies by presenting timely his or her claim to the appropriate agency before a federal court has jurisdiction to hear his or her claim. 28 U.S.C. § 2675(a). To effect this provision, 28 C.F.R. 14.2(a) provides that a claim must be "accompanied by a claim for money damages in a *sum certain*" id. (emphasis added). Mrs. Rispoli's claim, albeit derivative, is a separate and independent claim and must be clearly delineated. *Heaton v. United States*, 383 F.Supp. 589, 591 (S.D.N.Y.1974). Mrs. Rispoli, even though she was asked to provide further information by the District Counsel, failed to provide the government with a sum certain and substantiation as required by 28 C.F.R. 14.2(a). Because this information was specifically requested from Mrs. Rispoli and she was informed that the affidavit was not accepted as a claim by the District Counsel, we find it impossible to accept the argument that Mrs. Rispoli's claim was incorporated into Mr. Rispoli's claim. Because she failed to comply with the statutory procedure for making a claim against the government, we must dismiss Mrs. Rispoli's claim.

For the foregoing reasons, the government's motion to dismiss Mr. Rispoli's claim as untimely is denied and the government's motion to dismiss Mrs. Rispoli's claim is granted. In addition, the complaint against the Veterans Administration is dismissed because under the FTCA suit may only be brought against the United States.

SO ORDERED.