[No. 28360-0-I. Division One. January 13, 1992.]

JOHN RICHARD QUINN, ET AL, *Appellants*, v. JAMES PAUL CONNELLY, ET AL, *Respondents*.

*Dustin D. Deissner, W. Russell VanCamp,* and *VanCamp & Bennion* (*Charles M. McDonald, Lynn W. Malone,* and *McDonald, Harmone & Malone,* of counsel), for appellants.

*William A. Helsell, Bradley H. Bagshaw,* and *Helsell, Fetterman, Martin, Todd & Hokanson,* for respondents.

BAKER, J. — Dr. John R. and Patricia L. Quinn appeal the dismissal on summary judgment of their action for legal malpractice, alleging the trial court erred in ruling their claim was barred by the statute of limitations. Respondents James Paul Connelly and his law firm, Winston & Cashatt, cross-appeal, alleging the trial court erred in refusing to

dismiss the Quinns' Consumer Protection Act claim for the return of allegedly excessive attorney's fees.

## FACTS

Attorney Connelly defended Dr. Quinn in a criminal prosecution. Dr. Quinn was convicted of 15 counts of knowingly submitting false Medicaid claims and 2 counts of theft by deception. These convictions were affirmed on appeal. *State v. Quinn*, 43 Wn. App. 696, 719 P.2d 936, *review denied*, 105 Wn.2d 1020 (1986). Dr. Quinn and his wife later sued attorney Connelly and his law firm for malpractice. The only issue raised in the Quinns' appeal is whether their lawsuit was filed within the 3-year statute of limitations for attorney malpractice.

Dr. Quinn's criminal trial ended on June 17, 1983. All of the alleged negligent acts of attorney Connelly occurred during the trial, at which Dr. Quinn was present. Judgment and sentence were entered on October 28, 1983. On or about November 1, 1983, Dr. Quinn retained two new lawyers to handle his criminal appeal. On November 7, 1983, Dr. Quinn dismissed Connelly and his law firm. Connelly's last act on behalf of Dr. Quinn was the filing of a notice of appeal a few days later.

On or about April 1, 1984, the report of proceedings of the criminal trial was delivered to the appellate attorneys. On April 16, 1984, a third appellate attorney retained by the Quinns wrote a letter informing them that Connelly thought he might be sued for malpractice. The Quinns allege this was the first indication they received that Connelly might have committed malpractice. The second indication they received was in June or July 1984, when the appellate attorneys who were reviewing the trial transcript voiced criticism about Connelly's handling of the trial.

Dr. Quinn's criminal conviction was sustained on appeal in 1986. On March 30, 1987, the Quinns filed their complaint for malpractice. Both the criminal conviction and Dr. Quinn's dismissal of Connelly occurred more than 3 years before the lawsuit was filed. The trial court dismissed the

malpractice claim on respondents' motion for summary judgment, ruling it was time barred. The Quinns' appeal followed.

Together with their malpractice claim, the Quinns made a claim under the Consumer Protection Act for the return of attorney's fees paid. Respondents counterclaimed for payment of additional unpaid fees. The trial court refused to dismiss either of the fee claims. Respondents cross-appeal this decision, but acknowledge that their claim for unpaid fees is itself time barred and agree it should be dismissed if the Quinns' claims are dismissed.

## STATUTE OF LIMITATIONS

■■ The 3-year statute of limitations for attorney malpractice actions does not begin to run "until the client discovers, or in the exercise of reasonable diligence should have discovered the facts which give rise to his or her cause of action." *Peters v. Simmons*, 87 Wn.2d 400, 406, 552 P.2d 1053 (1976). In *Richardson v. Denend*, 59 Wn. App. 92, 795 P.2d 1192 (1990), *review denied*, 116 Wn.2d 1005 (1991), the court held, in a case based upon malpractice occurring during trial, that "upon entry of the judgment, a client, as a matter of law, possesses knowledge of all the facts which may give rise to his or her cause of action for negligent representation." *Richardson*, 59 Wn. App. at 96-97.

In *Richardson*, plaintiff sued an attorney who had unsuccessfully represented him in a criminal matter. The lawsuit was commenced more than 3 years after plaintiff's conviction, but plaintiff asserted he did not learn of the malpractice until he conducted independent legal research following his incarceration. In affirming a summary judgment of dismissal, the court stated:

> We recognize that application of the discovery rule generally presents questions of fact. *See Ohler v. Tacoma Gen. Hosp.*, 92 Wn.2d 507, 510, 598 P.2d 1358 (1979). In the context of actions for attorney malpractice premised upon errors or omissions allegedly occurring during the course of litigation, however, we find that the application of the discovery rule

presents a question of law because the pertinent facts are susceptible of but one conclusion. *See Hartley v. State*, 103 Wn.2d 768, 775, 698 P.2d 77 (1985).

The discovery rule merely tolls the running of the statute of limitations until the plaintiff has knowledge of the "facts" which give rise to the cause of action; it does not require knowledge of the existence of a legal cause of action itself. *See Sahlie v. Johns-Manville Sales Corp.*, 99 Wn.2d 550, 554, 663 P.2d 473 (1983); *Reichelt v. Johns-Manville Corp.*, 107 Wn.2d 761, 769, 733 P.2d 530 (1987); *Gevaart v. Metco Constr., Inc.*, 111 Wn.2d 499, 502, 760 P.2d 348 (1988). . . .

. . . Unlike the situation with the provision of other professional services, . . . the damages, if any, resulting from the errors or omissions of an attorney allegedly occurring during the course of litigation are embodied in the judgment of a court. The parties to such an action, in turn, are formally advised of the judgment of the court and, hence, receive notification of any damage which results from their attorney's representation. We conclude, therefore, that upon entry of the judgment, a client, as a matter of law, possesses knowledge of all the facts which may give rise to his or her cause of action for negligent representation.

*Richardson*, 59 Wn. App. at 95-97.

Appellants argue that this case is distinguishable from *Richardson* because attorney Connelly told Dr. Quinn that his conviction was a foregone conclusion and assured him it would be reversed on appeal. Connelly allegedly advised Dr. Quinn that his chances of reversal on appeal would be harmed if he or other defense witnesses testified. For this reason, appellants claim they were not put on notice of Connelly's malpractice by his failure to put on a defense or by the conviction itself. They argue that because of the relationship of trust that existed between themselves and their attorney, his assurances of success on appeal prevented them from discovering the malpractice until a later date.

The evidence that Connelly actually assured the Quinns of success on appeal is slim. Two of Dr. Quinn's statements in his June 1987 deposition were to the effect that respondent Connelly told him the case would have to be won, *if at all*, on appeal:

[H]e [Connelly] told me if I wanted to win the case, I had to win it on appeal[.]

[H]e [Connelly] said, "The only way you are going to win this case is on appeal."

The only statement in Dr. Quinn's deposition indicating Connelly assured him he would win on appeal is as follows:

Mr. Connelly never explained to me that there were going to be all these civil penalties coming in for thousands and thousands of dollars while we waited for appeal.

The idea I got from him when *he said, you are going to win on appeal*, I thought everything would come to a standstill, and you would wait for appeal. I didn't realize they could move in on you and collect on this and collect on that and the whole bit. So it was quite a shock.

(Italics ours.)

Dr. Quinn embellished this deposition testimony in his February 1989 affidavit in opposition to the summary judgment motion, stating:

Near the end of the trial which was June 17, 1983, I was repeatedly advised that the trial judge did not know what he was doing and that there were numerous trial errors made by Judge Merryman, the trial judge, which *would certainly result in the case being won on appeal. . . . I believed attorney Connelly completely that the case would be won on appeal as he announced.*

(Italics ours.)

■ Respondents urge that Dr. Quinn's affidavit testimony does not raise a genuine issue of material fact because it contradicts his earlier deposition testimony. *Marshall v. AC&S, Inc.*, 56 Wn. App. 181, 185, 782 P.2d 1107 (1989). However, the third statement quoted above from Dr. Quinn's deposition is in accord with his affidavit testimony that he was assured of victory on appeal. Although the affidavit appears to be a significant embellishment of his deposition testimony taken as a whole, it cannot be said that the former contradicts the latter. In reviewing a summary judgment, this court must consider the facts in a light most favorable to the nonmoving party, *Young v. Key Pharmaceuticals, Inc.*, 112 Wn.2d 216, 226, 770 P.2d 182 (1989); *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030

(1982), and thus we will assume that assurances of victory on appeal were given.

In attempting to distinguish *Richardson* on this basis, appellants analogize to *Rispoli v. United States*, 576 F. Supp. 1398 (E.D.N.Y. 1983), *aff'd*, 779 F.2d 35 (2d Cir. 1985), *cert. denied*, 474 U.S. 1069 (1986), a medical malpractice action in which the patient was told to expect severe pain and complications after a medical procedure, but was assured that the complications could be treated and the condition would resolve. The court held that the statute of limitations began to run not at the conclusion of the medical procedure, but only after a sufficient period of time had passed to alert the patient that the procedure was unsuccessful — in this case, not until after corrective surgery had failed. *Rispoli*, 576 F. Supp. at 1402-03.

This court recently issued a similar holding in *Zaleck v. Everett Clinic*, 60 Wn. App. 107, 802 P.2d 826 (1991), where the defendant physician allegedly assured plaintiff that numbness resulting from a medical procedure would subside. Plaintiff sued after the numbness continued despite three subsequent operations. We held that the physician's assurance did not serve to delay plaintiff's discovery of the element of damages during the ensuing 4½ years before he filed suit, stating that a reasonable person would have begun to doubt the doctor's assurances long before that time. *Zaleck*, 60 Wn. App. at 112.

While *Rispoli* and *Zaleck* are instructive to some extent, their usefulness in deciding the present appeal is limited. The physicians' assurances in those cases were not proven false until it became apparent that corrective surgery had failed. Here, Connelly's alleged assurances of success on appeal were not proven false until Dr. Quinn's conviction was affirmed on appeal. The arguable analogy to *Rispoli* and *Zaleck* is that the statute of limitations did not begin to run until Dr. Quinn's conviction was affirmed on appeal. Appellants do not make this contention, and in any event, it was rejected in *Richardson*, 59 Wn. App. at 97 n.7.

 A more fruitful area of inquiry is among those cases from other jurisdictions which have held that the statute of limitations for attorney malpractice may be tolled where an attorney fraudulently conceals his or her negligence. *See* Annot., *When Statute of Limitations Begins To Run Upon Action Against Attorney for Malpractice*, 32 A.L.R.4th 260 § 16, at 327-35 (1984).[1] Where the alleged fraudulent concealment consists of assurances of success on appeal or in subsequent litigation, the courts have found that such assurances, standing alone, do not constitute fraudulent concealment, or do not constitute such concealment as would extend the statute of limitations beyond the termination of the attorney-client relationship.[2]

In *Associated Realty Co. v. Kimmelman*, 19 Md. App. 368, 311 A.2d 464 (1973), the court held that in the absence of a request by the defendant attorneys to forbear suit, or a representation that they would not raise the statute of limitations as a defense, the mere fact that the attorneys assured plaintiff an adverse judgment would be reversed on appeal was insufficient to constitute fraudulent concealment. The court affirmed a summary judgment in favor of the attorneys on statute of limitation grounds, reasoning that such assurances, if they were made, would do nothing to conceal the cause of action and might in fact tend to confirm that one existed, at least for the cost of the appeal. Discovery of the cause of action was held to have occurred upon entry of the adverse judgment. *Associated Realty*, at 371-73.

In *Gill v. Warren*, 751 S.W.2d 33 (Ky. Ct. App. 1988), the court reversed a summary judgment of dismissal, holding that plaintiff had raised a sufficient factual issue as to

---

[1] In *Cornell v. Edsen*, 78 Wash. 662, 139 P. 602 (1914), the court held this rule did not apply in Washington. However, *Cornell* was effectively overruled in *Peters v. Simmons*, 87 Wn.2d 400, 404-06, 552 P.2d 1053 (1976), which adopted the "discovery rule" and disapproved *Cornell*.

[2] While counsel for the Quinns denied in oral argument that they were claiming fraudulent concealment, the practical effect of their attempt to distinguish *Richardson* is the same.

whether the defendant attorney should be estopped from asserting the statute of limitations where he had assured plaintiff that subsequent legal action would undo the results of a prior adverse judgment. However, in contrast to the present case, the attorney in *Gill* continued to represent plaintiff throughout the period during which plaintiff asserted the statute should be tolled, and plaintiff alleged he was " 'fully dependent' on [the attorney] 'for understanding of the nature and effect of the various legal proceedings.' " The court stated that if the professional relationship had ended upon conclusion of the underlying lawsuit, the malpractice action would have been time barred. *Gill*, 751 S.W.2d at 34.

Both *Gill* and *Associated Realty* were decided in jurisdictions which, like Washington, employ the discovery rule for determining when the statute of limitations on attorney malpractice actions begins to run. We find their reasoning persuasive.

Assuming arguendo that assurances of success on appeal can be considered fraudulent concealment in the context of the fiduciary relationship between attorney and client, then such concealment should be deemed to end when the attorney-client relationship ends, unless the attorney takes further steps to conceal his or her negligence. In *Cordial v. Grimm*, 169 Ind. App. 58, 346 N.E.2d 266 (1976), *overruled on other grounds in Shideler v. Dwyer*, 275 Ind. 270, 417 N.E.2d 281 (1981), the court affirmed a summary judgment in favor of defendant attorneys on statute of limitations grounds, rejecting plaintiff's claim that the statute should be tolled for fraudulent concealment beyond the end of the attorney-client relationship. The court held that absent an allegation that the attorneys acted after their employment to conceal the alleged malpractice, the statute was not further tolled despite the continuing pendency of an appeal of the underlying adverse decision. *Cordial*, at 69.

On the facts of this case, we find no grounds to distinguish *Richardson v. Denend, supra*, and therefore hold that the statute of limitations began to run on October 28, 1983,

the date of Dr. Quinn's criminal conviction. Even if fraudulent concealment of appellants' cause of action for malpractice had occurred, such concealment would be deemed to have ended when the attorney-client relationship ended in November 1983, more than 3 years before the Quinns filed suit. There were no allegations that respondents took any steps after that date to conceal their alleged negligence.[3]

### Consumer Protection Act

The trial court declined to dismiss the Quinns' claim under the Consumer Protection Act (CPA). Under the CPA, five elements must be proven to establish a claim:

> (1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation.

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d 531 (1986).

■ The second element, "occurring in trade or commerce", cannot be satisfied by claims directed at the competence or strategy of an attorney. Such claims amount to allegations of malpractice and are exempt from the Consumer Protection Act. Only the entrepreneurial aspects of legal practice can satisfy the "trade or commerce" requirement. These include "how the price of legal services is determined, billed, and collected and the way a law firm obtains, retains, and dismisses clients." *Short v. Demopolis*, 103 Wn.2d 52, 61, 691 P.2d 163 (1984). Thus, only the Quinns' allegations concerning respondents' handling of their fees — not the allegations of professional negligence — may be the subject of a CPA action.

Dr. Quinn agreed to pay respondents $75,000 plus expenses for their services in representing him in the criminal trial. While the Quinns allege the fee was excessive, they do not allege that respondents employed any "unfair or deceptive . . . practice" in determining the fee. Their only

---

[3]In light of our holding that the Quinns' action was time barred, it is unnecessary to reach the alternative grounds for affirmance suggested by respondent.

complaint relative to the entrepreneurial aspect of respondents' practice is that Connelly requested additional fees on the eve of trial. However, the Quinns never paid any additional fees, so they suffered no damages as a result of the request. Nor is there a chance that they will suffer damages in the future, since respondents have agreed to dismiss their counterclaim for additional fees if all of appellants' claims are dismissed. We hold that the trial court erred in failing to dismiss the Quinns' claim under the CPA.

The summary judgment dismissing the Quinns' legal malpractice claim is affirmed. The case is remanded with instructions to enter dismissals of the Quinns' Consumer Protection Act claim and respondents' counterclaim for unpaid fees.

WEBSTER, A.C.J., and COLEMAN, J., concur.

Review denied at 118 Wn.2d 1028 (1992).