Janet L. WISNER and David Wisner, Plaintiffs,

v.

UNITED STATES of America, Defendant.

UNITED STATES of America, Third-party Plaintiff,

v.

Fern FARQUHAR, Third-party Defendant.

No. 92–CV–445.

United States District Court, N.D. New York.

April 5, 1994.

Davoli, McMahon & Kublick, P.C., Syracuse, NY (James T. Snyder, of counsel), for plaintiffs.

Gary L. Sharpe, U.S. Atty., N.D.N.Y., Syracuse, NY (William F. Larkin, Asst. U.S. Atty., of counsel), for defendant and third-party plaintiff.

Bond, Schoeneck & King, Syracuse, NY (John J. Dee, of counsel), for third-party defendant.

## MEMORANDUM–DECISION and ORDER

HURD, United States Magistrate Judge.

### I. INTRODUCTION.

This action is the result of an accident which occurred on September 14, 1990, when the plaintiff, Janet L. Wisner, slipped and fell on the premises owned by the third-party defendant, Fern Farquhar ("Farquhar"), and leased to the defendant, United States of America ("United States"), for the purpose of operating a post office. She sustained certain personal injuries as a result of the fall.

Suit was commenced on April 7, 1992, by plaintiff and her husband, David Wisner, for damages allegedly caused by the negligence of the United States. An administrative claim was filed against the postal service by Janet Wisner. However, no claim was submitted by her husband, nor did plaintiffs name the Postmaster General, or Farquhar the owner of the premises, as party defendants. On June 1, 1992, the United States commenced a third-party action against Farquhar. The United States has moved for summary judgment, dismissing plaintiff's action against it pursuant to Fed.R.Civ.P. 56. Farquhar has joined in that motion, but has

not made a separate motion to dismiss the third-party complaint. Plaintiffs oppose the motion.

## II. *SUMMARY JUDGMENT.*

A motion for summary judgment may be granted only when the moving party carries its burden of showing the absence of a genuine issue of material fact. Fed.R.Civ.P. 56; *Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell, Partnership v. Medfit Int'l, Inc.,* 982 F.2d 686, 689 (1st Cir.1993); *Thompson v. Gjivoje,* 896 F.2d 716, 720 (2d Cir.1990) (citations omitted). "Ambiguities or inferences to be drawn from the facts must be viewed in a light most favorable to the party opposing the summary judgment motion." *Project Release v. Prevost,* 722 F.2d 960, 968 (2d Cir.1983). In other words, a motion for summary judgment pursuant to Fed.R.Civ.P. 56 shall be granted only "when the pleadings, evidence obtained through discovery, and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law." *Lang v. Retirement Living Pub. Co.,* 949 F.2d 576, 580 (2d Cir.1991). Therefore, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

Thus, if the nonmoving party can not produce sufficient evidence to support a jury verdict, summary judgment is proper. *Id.* at 249, 106 S.Ct. at 2510–11. "In determining how a reasonable jury would decide, the Court must resolve all ambiguities and draw all inferences against the moving party." *Lang,* 949 F.2d at 580. However, when the moving party has met the burden, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *see also Liberty Lobby,* 477 U.S. at 247–48, 106 S.Ct. at 2509–10. At that point, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. *Id.* "The judge's function is not ... to weigh the evidence and determine the truth of the matter," *Liberty Lobby,* at 249, 106 S.Ct. at 2511, such "is the prerogative of the finder of fact." *Murphy v. Provident Mutual Life Ins. Co.,* 923 F.2d 923, 930 (2d Cir.1990) (Kearse, J., dissenting), *cert. denied,* —— U.S. ——, 112 S.Ct. 65, 116 L.Ed.2d 40 (1991). Therefore, the judge's role is "to determine whether there does indeed exist a genuine issue for trial." *Liberty Lobby,* 477 U.S. at 249, 106 S.Ct. at 2511.

Additionally, the courts of New York have consistently warned against granting a summary judgment motion because "negligence cases by their nature do not usually lend themselves to summary judgment," *Ugarriza v. Schmieder,* 46 N.Y.2d 471, 474, 386 N.E.2d 1324, 1325, 414 N.Y.S.2d 304, 305 (1979), for "even when the facts are conceded, there is often a question as to whether the defendant or the plaintiff acted reasonably under the circumstances [, an issue which] can rarely be decided as a matter of law." *Lugo v. LJN Toys, Ltd.,* 146 A.D.2d 168, 170, 539 N.Y.S.2d 922, 923–24 (1st Dept.1989) (*quoting Andre v. Pomeroy,* 35 N.Y.2d 361, 364, 320 N.E.2d 853, 854–55, 362 N.Y.S.2d 131, 133 (1974)), *aff'd,* 75 N.Y.2d 850, 552 N.E.2d 162, 552 N.Y.S.2d 914 (1990).

## III. *FACTS.*

Farquhar and the United States are parties to a written lease agreement for the premises located in Adams Center, New York. This building has been leased to the United States for use as a post office since 1962. The lease names lessor (Farquhar) as the party required to maintain the premises in good repair and tenantable condition.[1] However, since the sidewalks were constructed by the United States, and the sidewalks and landscape area were included in the description of the leased property, but not specifically referenced in clause 11(a) of the lease, lessee (United States) holds responsibility for those areas. The responsibility of

---

1. Paragraph 11(a) of the lease states that, lessor is responsible for maintaining the premises in good repair and tenantable condition. (Def. Mem. of Law Ex. "C").

Farquhar, if any, need not be determined at this time.

Plaintiff obtained a post office box in the facility in December 1988, and picked up her mail on a regular basis at 8:00 a.m., Monday through Friday, when the facility opened. Prior to the accident, plaintiff never slipped while using the sidewalk. There is no evidence of anyone slipping or falling on the sidewalk prior to the plaintiff's accident. Plaintiff informed a postal worker of the poor maintenance of the sidewalk during the winter of 1988–89 stating, "I spoke to the maintenance man one time ... it was in the wintertime and [the sidewalk] needed to be salted." (Wisner Dep. at 21). The weather was clear and dry on September 14, 1990, but the sidewalk was damp from a heavy dew the night before, and also had a scattering of small stones, sand, twigs, and leaves. Plaintiff described the accident, stating that she was leaving the Adams Center Post Office on the morning of September 14, 1990, "and the next thing I knew I was on the ground.... I felt my foot slip and I tried to stop myself, but I couldn't."

Q. So, you fell forward on your left knee ... ?

A. Right.

(Wisner Dep. at 23, 25) She fell on the same sidewalk she had traversed moments before while entering the post office. Plaintiff alleges that defendant negligently designed and constructed the sidewalk by allowing too severe a slope to exist without the placement of handrails, and inadequately maintained the sidewalk resulting in the existence of gravel, stones, sand, twigs, and leaves being scattered over it at the time of the accident. Plaintiff claimed to have seen this debris on the sidewalk on prior visits, but on the day of the accident, the sand and gravel seemed heavier than usual to her. She sustained a comminuted fracture of her patella as a result of the fall.

## IV. DISCUSSION.

### A. DAVID WISNER'S DERIVATIVE CLAIM.

Federal law requires the filing of an administrative claim with the appropriate federal agency. 28 U.S.C. § 2675(a). This requirement affects jurisdiction, and stands as an absolute prerequisite to maintaining a civil action against the United States for damages arising from actionable conduct by a federal employee. *McNeil v. U.S.,* —— U.S. ——, 113 S.Ct. 1980, 1983, 124 L.Ed.2d 21 (1993). Plaintiff, David Wisner failed to file a separate administrative claim for loss of services. Nor did he include his claim for loss of services within his wife's timely filed administrative claim. Plaintiffs argue that the mere mention of his name within his wife's administrative claim should have put defendant on notice of his potential claim, even though he was not listed as a claimant, nor was his personal claim of loss of services articulated.

When has the United States received adequate notice of a loss of consortium claim from a spouse of a claimant who seeks redress under the Federal Tort Claims Act? The courts of the Second Circuit have broached this question before. The Second Circuit Court of Appeals affirmed an Eastern District decision finding notice not adequately conveyed when the spouse of a claimant failed to specify a sum certain for loss of consortium in her husband's administrative claim form, as required by 28 C.F.R. § 14.-2(a). This jurisdictional flaw required dismissal. *Rispoli v. U.S.,* 576 F.Supp. 1398 (E.D.N.Y.1983); *aff'd,* 779 F.2d 35 (2d Cir. 1985), *cert. denied,* 474 U.S. 1069, 106 S.Ct. 829, 88 L.Ed.2d 800 (1986). The Eastern District Court followed with findings that a copy of the complaint containing both the spouse's name as claimant and the claim for loss of consortium did amount to adequate notice. *Thomas v. New York City,* 814 F.Supp. 1139 (E.D.N.Y.1993); *see also Hanlon v. U.S.,* 134 F.R.D. 42 (E.D.N.Y.1991) (When the administrative claim listed the spouse as a claimant, defendant was found to have received adequate notice.) The facts herein offer neither the notice obtained in *Thomas,* nor that of *Hanlon.* Unlike *Thomas,* plaintiff did not proffer a claim for loss of consortium anywhere on the claim form, or specify a sum certain as required by 28 C.F.R. § 14.2(a). Plaintiff used the same standard form 95 used in *Hanlon* and referenced in 28 C.F.R. § 14.2(a), but she only

mentioned Mr. Wisner as a witness to the accident, and not as a claimant as was done in *Hanlon.*

The Southern District Court derived similar results, stating, "[t]he filing of an administrative claim by the recipient of a direct injury is insufficient to put the government on notice of a claim for loss of services on the part of a related adult if the lost services are not mentioned in the claim." *Fol v. U.S.,* 548 F.Supp. 1257 (S.D.N.Y.1982). Finally, the Northern District Court, in an unpublished opinion by Chief Judge Thomas J. McAvoy citing *Rispoli,* stated that where plaintiff failed to include a sum certain for the claim of loss of consortium as required by 28 C.F.R. § 14.2(a): "[a]s such, it cannot be said the Government was placed on sufficient notice of the amount of her claim and the jurisdictional requirements are therefore not satisfied." *Willie v. U.S.,* Civ. No. 92–1143 (N.D.N.Y. May 26, 1993) (1993 WL 184149 at 6).

Therefore, David Wisner's derivative claim must be dismissed for his failure to file an administrative claim or to place the United States on notice of the amount of his claim.

### B. *JANET WISNER'S CLAIMS.*

Pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.,* the United States has waived sovereign immunity from suit for claims of property damage or personal injury caused by the "negligent or wrongful act or omission" of its employees "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b) (1982); *United States v. Muniz,* 374 U.S. 150, 152, 83 S.Ct. 1850, 1852, 10 L.Ed.2d 805 (1963); *Hurwitz v. United States,* 884 F.2d 684, 686 (2d Cir.1989), *cert. denied,* 493 U.S. 1056, 110 S.Ct. 865, 107 L.Ed.2d 949 (1990); *Guccione v. United States,* 847 F.2d 1031, 1033 (2d Cir.1988), *reh'g denied,* 878 F.2d 32 (2d Cir.1989), *cert. denied,* 493 U.S. 1020, 110 S.Ct. 719, 107 L.Ed.2d 739 (1990); *Avakian v. United States,* 739 F.Supp. 724, 730 (N.D.N.Y.1990). Since the alleged negligent acts occurred in New York, the law of New York is control-

ling. 28 U.S.C. §§ 1346(b) & 2674; *Hurwitz,* 884 F.2d at 686.

In New York, the present standard of care owed to someone lawfully on the premises consists of a single standard of care, that is, a duty to exercise reasonable care under the circumstances in maintaining the premises in a safe condition whereby foreseeability is the measure of liability. *Basso v. Miller,* 40 N.Y.2d 233, 241, 352 N.E.2d 868, 872, 386 N.Y.S.2d 564, 568 (1976); *Scurti v. City of New York,* 40 N.Y.2d 433, 434, 354 N.E.2d 794, 795, 387 N.Y.S.2d 55, 56 (1976); *Bartolomeo v. Evangel Church of God,* 169 A.D.2d 696, 697, 564 N.Y.S.2d 184, 185 (2d Dept. 1991). This duty takes into account all circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden of avoiding the risk of injury. *Basso,* 40 N.Y.2d at 241, 352 N.E.2d at 872, 386 N.Y.S.2d at 568; *Gordon v. American Museum of Natural History,* 113 A.D.2d 701, 703, 493 N.Y.S.2d 464, 466 (1st Dept.1985), *rev'd on other grounds,* 67 N.Y.2d 836, 492 N.E.2d 774, 501 N.Y.S.2d 646 (1986).

To prove negligence on the part of the United States, plaintiff must establish that there was a dangerous condition, and that either the United States affirmatively created the dangerous condition or had notice, actual or constructive, of same. *Lowrey v. Cumberland Farms, Inc.,* 162 A.D.2d 777, 778, 557 N.Y.S.2d 689, 690 (3d Dept.1990); *Edwards v. Terryville Meat Co.,* 178 A.D.2d 580, 580, 577 N.Y.S.2d 477, 478 (2d Dept. 1991). Plaintiff must also prove that after knowledge or notice was acquired, the defendant had a reasonable opportunity to correct the dangerous condition. *Putnam v. Stout,* 38 N.Y.2d 607, 612, 345 N.E.2d 319, 321, 381 N.Y.S.2d 848, 850 (1976); *Doyle v. Streifer,* 34 A.D.2d 183, 185, 310 N.Y.S.2d 165, 167 (3d Dept.1970). In other words, there must be evidence tending to show the existence of a dangerous condition; that defendant either created the condition or had actual or constructive knowledge of said condition; that it failed to correct the condition within a reasonable time after acquiring such knowledge; and that plaintiff's accident and resulting injury were proximately caused by the dangerous condition. *Lowrey,* 162 A.D.2d at 778,

557 N.Y.S.2d at 691; *Torri v. Big V of Kingston, Inc.*, 147 A.D.2d 743, 744-45, 537 N.Y.S.2d 629, 630-31 (3d Dept.1989); *Payne v. Big V Supermarkets, Inc.*, 140 A.D.2d 422, 423, 528 N.Y.S.2d 123, 124 (2d Dept.1988); *Lewis v. Metropolitan Transp. Authority*, 99 A.D.2d 246, 249, 472 N.Y.S.2d 368, 371 (1st Dept.1984), *aff'd*, 64 N.Y.2d 670, 474 N.E.2d 612, 485 N.Y.S.2d 252 (1984).

### 1. *DANGEROUS CONDITION.*

Plaintiff points to the sidewalk outside the Adams Center Post Office as the "condition" at issue in this case; specifically, its design, construction and maintenance. The question then becomes whether the sidewalk's design, construction, or maintenance created a "dangerous condition" for the plaintiff, so as to require the defendant to either correct same or to warn patrons.

Dealing first with the sidewalk's design and construction, plaintiff proffered expert testimony to the effect that the sidewalk was installed at a slope greater than the standard recommended by the American National Standards Institute (ANSI) without the addition of handrails. Defendant countered that ANSI standards were completely voluntary and not applicable, having not been adopted by the United States Postal Service. It notes that the Postal Service has adopted its own regulations meant to mirror the ANSI standards whenever possible, and that the Adams Center Post Office meets all requirements called for in those standards.[2] Defendant also points out that the standards examined by both sides relate to the accessibility of a building to handicapped individuals, and not to the safety of patrons in general. Defendant argues that plaintiff—carrying no handicap, and having adequate access to the building as shown by the occurrence of the accident upon exiting—cannot benefit from these standards.

■ While it is true that "[i]f a given industry lags behind in adopting procedures that reasonable prudence would dictate be instituted, then [the court is] free to hold a given defendant to a higher standard of care than that adopted by the industry," *Hoemke v. New York Blood Center*, 912 F.2d 550, 552 (2d Cir.1990); here, the standards in use draw no such scrutiny from plaintiff. There has been no allegation of the application of inadequate or unreasonable standards.

■ Therefore, rather than delve into the defendant's successes in meeting these standards, the court finds these standards not applicable to the case at hand. The standards exist to ensure accessibility for the handicapped. While such standards necessarily take into account the safety of certain construction, the standards protect the handicapped, and cannot be transformed into a sword for another not subject to its protection. However, the expert testimony does raise the question of whether the sidewalk, absent handrails, fell away at a slope too severe to be considered safe for the handicapped.

The four photographs of the sidewalk submitted by plaintiff, show an ordinary sidewalk devoid of any cracks, holes, or deviations with a slope and no handrails. The photos do reveal an increase in the slope on the portion of the sidewalk farthest from the building, where plaintiff allegedly fell. However, even this carried a rise of no more than four inches, acting almost as a ramp to compensate for the road's curb height. After viewing the photographs and accepting plaintiff's expert testimony, a conclusion can be drawn that the construction and design of this sidewalk, at the present slope without the addition of handrails, *may* have made the sidewalk a dangerous condition for use by a *handicapped person*, but taken alone, certainly did not create a dangerous condition for use by the *plaintiff*.

Next we deal with the gravel, stones, sand, twigs, and leaves scattered over the sidewalk.

---

**2.** The Architectural Barriers Act, 42 U.S.C. § 4151 et seq, requires all buildings leased by the Postal Service after January 1, 1977, to be accessible to the handicapped. *Rose v. U.S. Postal Service*, 774 F.2d 1355 (9th Cir.1984). This act requires that the Postal Service themselves "prescribe such standards ... to insure whenever possible that physically handicapped persons will have ready access to, and use of, such buildings." 42 U.S.C. § 4154a. The Postal Service adopted Handbook RE-4, *Standards For Facility Accessibility By the Physically Handicapped.* (*See* Def. Ex. "F")

Plaintiff alleges that defendant negligently failed to sweep this scattering of debris from the sidewalk surface. She argues that this failure created a "dangerous condition" which ultimately resulted in her fall. Evidence has been presented of the amount of debris scattered across the sidewalk at the time of the accident. Plaintiff's statements elicited at her deposition touch on the subject. She stated, "[The sidewalk] was damp with little stones laying all over it. . . . There would be a twig here and there, leaves." (Wisner Dep. at 20) Her affidavit in opposition states, "I observed gravel, sand, twigs, and debris on the area of the sidewalk where I fell. When I fell, there was more sand and gravel on the sidewalk than usual."

██ The existence of debris in the nature of gravel, stones, sand, twigs, and leaves on an outdoor sidewalk in Northern New York in September, cannot alone be considered a dangerous condition. Were a classification of this type[3] to stand, every puddle, blowing leaf, tuft of grass and oil spot on a sidewalk or in a parking lot would line up to join the group.

However, plaintiff has not failed to raise an issue of fact as to the existence of a "dangerous condition." For while any one of the alleged conditions, taken alone—i.e. the slope of the sidewalk, the lack of handrails or the existence of debris on the sidewalk surface—could not strive to the level of dangerous—combined, they may. Their combination certainly raises a question for the fact-finder.

There are eight possible combinations for the "condition" of the area in question.

| Sidewalk | Handrails | Debris | Possible dangerous Condition |
|---|---|---|---|
| 1. flat | yes | yes | no |
| 2. flat | yes | no | no |
| 3. flat | no | no | no |
| 4. flat | no | yes | no |
| 5. slope | yes | yes | no |
| 6. slope | yes | no | no |
| 7. slope | no | no | no |
| 8. slope | no | yes | yes |

Seven of the "conditions" would not, as a matter of law, create a dangerous condition. Condition No. 8 which exists in this case, would make a question of fact of whether a

dangerous condition existed at the time of plaintiff's fall. There is no dispute about the sidewalk having a slope and no handrails, and the plaintiff's evidence shows that it was covered with debris. The gravel, stones, sand, twigs, and leaves described by plaintiff, while not constituting a dangerous condition on its own, may be found to create one on this particular sloped sidewalk without handrails. Therefore, the plaintiff has satisfied the first element of her case.

### 2. *NOTICE.*

The United States having constructed the sidewalk, would of course, have actual notice of the condition, created by either the slope or lack of handrails. However, a dangerous condition involving a combination of conditions, will necessarily require notice of all of those conditions. Therefore, a different situation exists with regard to the debris on the sidewalk. On the day of the accident, plaintiff did not notify anyone associated with the Postal Service of the existence of gravel, stones, sand, twigs and leaves on the sidewalk even though she walked over the area before entering the building. Likewise, she fails to provide any other evidence of actual notice given to the Postal Service that would have enabled them to rectify the condition. She claims merely to have informed them over a year prior, that the sidewalk was icy from the winter weather. Without more, plaintiff's claim of negligent maintenance cannot rely upon actual notice.

██ "To constitute constructive notice, a defect must be *visible and apparent* and it must exist for a sufficient length of time prior to the accident to permit defendant's employees to discover and remedy it," *Gordon,* 67 N.Y.2d at 837, 492 N.E.2d at 775, 501 N.Y.S.2d at 647 (emphasis added); *Stoerzinger v. Big V Supermarkets, Inc.,* 188 A.D.2d 790, 790, 591 N.Y.S.2d 257, 257 (3d Dept.1992), or must have existed for so long that the defendant is presumed to have seen the dangerous condition, or to have been negligent in failing to see said condition. *Lewis,* 99 A.D.2d at 249, 472 N.Y.S.2d at 371.

**3.** I.e. if a scattering of gravel, stones, sand, twigs, and leaves was classified as a dangerous condi-        tion.

There is evidence shedding light on the duration of this particular condition. Plaintiff visited the post office on a daily basis for almost two years, and claims, "[t]here was always some [debris] on there." (Wisner Dep. at 20) "Gravel, sand, twigs, and other debris was [sic] always on the sidewalk leading to the Adams Center Post Office. I had seen it the past winter." (Wisner Affidavit in opposition)

Plaintiff's testimony suggests that the debris on the sidewalk accumulated, undisturbed for as long as twenty-one months. Defendant has not countered this with any evidence that they had ever swept the sidewalk. In fact, the disagreement between defendant and its lessor, third-party defendant Farquhar, regarding the responsibility for the sidewalk's maintenance, suggests that the sidewalk has never been swept at all. The defendant clearly had knowledge that the sidewalk was sloped and without handrails. Whether the existence of debris for almost two years on such a sidewalk made it a "visible and apparent" dangerous condition, thus putting defendant on constructive notice and requiring it to remedy the dangerous condition by sweeping, must go to the finder of facts as well.

### 3. *PROXIMATE CAUSE.*

"Proximate or legal cause is defined as that which in a natural sequence, unbroken by any new cause, produces that event and without which that event would not have occurred." *Caraballo v. U.S.*, 830 F.2d 19, 22 (2d Cir.1987); *Winant v. Carefree Pools,* 709 F.Supp. 57, 61 (E.D.N.Y.1989), *aff'd,* 891 F.2d 278 (2d Cir.1989) (diving into water without observing its shallowness is the sole proximate cause of an injury and not the failure on the part of defendant to post warning signs).

"The concept of proximate cause, ... is an illusive one, incapable of being precisely defined to cover all situations." *Derdiarian v. Felix Contracting Corp.,* 51 N.Y.2d 308, 314, 414 N.E.2d 666, 669, 434 N.Y.S.2d 166, 169 (1980). This results, "in part, because the concept stems from policy considerations that serve to place manageable limits upon the liability that flows from negligent conduct." *Id.* Judge Andrews of the New York Court of Appeals elucidated, "what we do mean by the word 'proximate' is, that because of convenience, of public policy, of a rough sense of justice, the law arbitrarily declines to trace a series of events beyond a certain point." *Palsgraf v. Long Is. R.R. Co.,* 248 N.Y. 339, 352, 162 N.E. 99 (1928) (dissenting opinion).

The New York Court of Appeals, quoting former Chief Judge Benjamin Cardozo, explained that just as " '[t]he range of reasonable apprehension is at times a question for the court, and at times, if varying inferences are possible, a question for the jury,' [s]o it is with proximate cause." *Ventricelli v. Kinney System Rent A Car, Inc.,* 45 N.Y.2d 950, 952, 383 N.E.2d 1149, 1149, 411 N.Y.S.2d 555, 555 (1978) *quoting Palsgraf,* 248 N.Y. at 345, 162 N.E. 99. Thus, the court must first be satisfied that a prima facie case has been established. Only then will the finder of fact be called upon to determine proximate cause. *Derdiarian,* 51 N.Y.2d at 315, 414 N.E.2d at 669, 434 N.Y.S.2d at 169. "To meet its burden of proving a prima facie case, plaintiff must generally show that the defendant's negligence was a substantial cause of the events which produced the injury." *Id.*

Therefore, it must be shown that defendant's failure to remedy the dangerous condition—debris scattered across an inclined sidewalk possessing no handrails—substantially caused plaintiff's fall. Plaintiff could only surmise the cause of her fall, stating that "the next thing I knew I was on the ground." (Wisner dep. p. 23) Plaintiff's expert merely makes the conclusory statement that such conditions "could have been a contributing factor." But is this enough? New York's Court of Appeals believed it to be so, citing two separate cases where no proof of proximate cause had been presented and yet the question of its existence was given to the jury. The court reasoned that "a fall was a natural and probable consequence of the conditions present [i.e. litter, wetness and wear] on the stairs," and therefore a prima facie case had been presented.[4] *Gordon,* 67

---

**4.** The wetness of the sidewalk would, of course, be another factor to consider. Plaintiff had actu-

N.Y.2d at 838, 492 N.E.2d at 775, 501 N.Y.S.2d at 647 *referencing Kelsey v. Port Auth.*, 52 A.D.2d 801, 383 N.Y.S.2d 347 (1st Dep't.1975), *Gramm v. State of New York*, 28 A.D.2d 787, 281 N.Y.S.2d 235 (3d Dep't.1967), *aff'd* 21 N.Y.2d 1025, 238 N.E.2d 498, 291 N.Y.S.2d 7 (1968).

### 4. *CONCLUSION.*

For the purposes of this motion, the plaintiff need only come forward with evidence showing genuine issues to be decided by the trier of facts: (1) that defendant was negligent in designing, constructing or maintaining the sidewalk; (2) this failure created a dangerous condition; (3) defendant had timely actual or constructive notice of the dangerous condition and failed to take steps to remedy the condition; and (4) the dangerous condition was a proximate cause of her accident and injury.

Viewing all of the evidence in a light most favorable to the plaintiff as the court must, genuine issues of material fact can be found with regard to the elements of plaintiff's case. There is no credible evidence to support a finding of any negligence in the design or construction of the sidewalk. However, once the defendant designed and constructed the sidewalk with a slope and no handrails, it must use reasonable care to keep the sidewalk free of debris. The fact-finder would be entitled to find that it failed in that regard. So, there is support for the allegations that the condition of the sidewalk on September 14, 1990, including its slope, lack of handrails, and gravel, stones, sand, twigs, and leaves combined to create a dangerous condition to the plaintiff, and that the defendant had notice of same. There is also support for the allegation that these combined conditions were a proximate cause of plaintiff's fall.

As a result, defendant is not entitled to summary judgment against plaintiff, Janet L. Wisner.

Therefore, it is ORDERED that:

al notice, and defendant at least had constructive notice of same. In Upstate New York, everyone is aware that a sidewalk may remain wet for a

1. The defendant's motion for summary judgment against DAVID WISNER is granted;

2. The complaint is dismissed as to the claim of DAVID WISNER; and

3. The defendant's motion for summary judgment against JANET L. WISNER is denied.

IT IS SO ORDERED.

considerable period of time after a rainfall or heavy dew.