(September 28, 1989)

■ MARTIN A. et al., on Behalf of Themselves and All Others Similarly Situated, Respondents, and FRANCES F. et al., on Behalf of Themselves and All Others Similarly Situated, Intervenors-Respondents, v GEORGE GROSS, as Administrator of the New York City Human Resources Administration, et al., Appellants, et al., Defendant. KATHERINE COSENTINO et al., on Behalf of Themselves and All Others Similarly Situated, Respondents-Appellants, and NANETTE PICHON et al., on Behalf of Themselves and All Others Similarly Situated, Intervenors-Respondents-Appellants, v CESAR A. PERALES, as Commissioner of the New York State Department of Social Services, et al., Appellants-Respondents.—Order, Supreme Court, New York County (Elliott Wilk, J.), entered April 30, 1987, which, *inter alia,* granted plaintiffs in both the *Martin A.* and *Cosentino* actions a preliminary injunction directing the city defendants to develop a plan to meet the obligation to provide preventive services, granted these plaintiffs a preliminary

injunction against the State enjoining the State from imposing a 90-day limit on emergency shelter as a preventive service, and denied the city's motions to dismiss the complaints and for summary judgment, unanimously affirmed, without costs.

Order, Supreme Court, New York County (Elliott Wilk, J.), entered April 27, 1988, which, *inter alia,* denied the city's motion to dismiss the complaint of the intervenor F. family, and which granted the F. family a preliminary injunction, unanimously affirmed, without costs.

In these actions, plaintiffs essentially claim that the various governmental defendants failed to establish plans to provide preventive services to families whose children were determined to be at risk of foster care, in violation of the Child Welfare Reform Act of 1979 (Social Services Law § 409 *et seq.)* and the regulations promulgated thereunder.

In the *Martin A.* action plaintiffs are several families whose children were in foster care or determined by defendant social service agencies to be in jeopardy of foster care because of a variety of severe, tragic personal crises.

In the *Cosentino* action plaintiffs are homeless families whose children were eventually placed in foster care as a result of their inadequate housing situation.

The *Martin A.* plaintiffs seek to compel defendants to comply with State and Federal law by providing them with preventive and protective services reasonably calculated to preserve family integrity. They claim that even though the defendants knew that their children were in foster care or in jeopardy of foster care, the defendants failed to assess the situation at all and did not provide any preventive services as required by law. They allege that systemic problems exist which are incompatible with the delivery of legally mandated preventive and protective services.

The *Cosentino* plaintiffs claim that defendants have a policy and practice of encouraging or inducing homeless or inadequately sheltered families to place and keep their children in "voluntary" foster care for extended periods of time because of inadequate or nonexistent housing. They seek to enjoin the placement or retention of children in foster care unless defendants first (1) determine whether the provision of housing-related preventive services can avert or shorten foster care; (2) inform affected families of the availability of housing-related preventive services; and (3) develop and implement meaningful case plans to ensure the provision of preventive housing services. They contend that defendants must develop mecha-

nisms to link the preventive service program with various housing agencies and programs throughout the city.

The *Cosentino* plaintiffs also seek to enjoin the State from imposing a 90-day limit on emergency shelter as a preventive housing service.

The underpinning of these actions is the expressed legislative declaration of a fundamental State interest in preserving family integrity and a statutory obligation to provide preventive services in various circumstances.

The New York State Legislature has imposed an unequivocal duty on child welfare officials to preserve family integrity. To further that goal, social service officials are required to provide assistance, care and services to maintain children together with their parents: "As far as possible families shall be kept together, they shall not be separated for reasons of poverty alone, and they shall be provided services to maintain and strengthen family life." (Social Services Law § 131 [3].)

The duty to preserve family integrity is heightened when circumstances of destitution threaten to separate children from their parents. Thus, social services officials must:

"(a) Investigate the family circumstances of each child reported as destitute in order to determine what care, supervision or treatment, if any, such child requires.

"(b) Administer and supervise relief to families with destitute children when such families are unable to care for such children and relief is necessary to prevent the separation of children from their parents." (Social Services Law § 397 [1] [a], [b].)

The Legislature has found that the State's "first obligation is to help the family with services to prevent its break-up or to reunite it if the child has already left home". (Social Services Law § 384-b [1] [a] [iii].) In addition, "[t]he legislature further finds that many children who have been placed in foster care experience unnecessary protracted stays in such care without being adopted or returned to their parents or other custodians. Such unnecessary stays may deprive these children of positive, nurturing family relationships and have deleterious effects on their development into responsible, productive citizens." (§ 384-b [1] [b].)

To that end, the Child Welfare Reform Act of 1979 (Social Services Law § 409 *et seq.)* reflects the legislative imperative that preventive services be provided to avoid unnecessary foster care placement. The purpose of the law is to delineate a State policy of preserving the natural homes of children in

foster care or at risk of placement in foster care by placing a new emphasis on preventive services to maintain family relationships and reunite families whenever possible.

The main order on appeal arises in the context of the plaintiffs' motion for a preliminary injunction directing the city defendants to establish a plan for the provision of the required services and for class certification, and the defendants' preanswer cross motion to dismiss the complaint for failure to state a cause of action and for summary judgment.

In pertinent part, Justice Wilk granted a preliminary injunction, finding that the plaintiffs established a likelihood of success by dramatizing, in an extensive documentary showing, the defendants' failure to provide the statutorily mandated services both in general, as a system-wide failure, and specifically to the plaintiff families, who, the record discloses, were clearly eligible for services to prevent foster care placement of their children. Justice Wilk denied the motion for class certification without prejudice to renewal upon a subsequent showing of systemic noncompliance. (In a subsequent order, Justice Wilk entertained a renewed motion for class certification, and while finding that systemic deficiencies were shown, deferred determination of the motion until after determination of this appeal.) Justice Wilk denied the city's motion to dismiss for the reasons that he granted the preliminary injunction, as implicitly finding that the complaint stated a valid cause of action, and he denied the motion for summary judgment as premature because answers had not yet been served.

The appellate presentation of the defendants focuses on the decision of this court in *Grant v Cuomo* (130 AD2d 154, *affd* 73 NY2d 820), rendered subsequent to the order of Justice Wilk that is before us. The defendants' primary argument is that the determination in *Grant,* denying relief to parties seeking to mandate the provision of certain preventive services to people at risk of foster care placement, compels a reversal and denial of relief here. However, while the cases are superficially similar, upon closer scrutiny there are fundamental differences between the cases which bring this case outside of the holding in *Grant.*

In *Grant (supra),* the plaintiff families asserted that they were eligible for preventive services because they were at risk of foster care placement, and that the governmental defendants failed to provide said services. However, in *Grant,* the plaintiffs were challenging the failure of defendants to make a threshold determination as to whether or not the plaintiff children were, in fact, at risk and in need of preventive

services. *Grant* held that this determination involved a discretionary judgment by the appropriate agencies as to whether the subject children were at risk and therefore eligible for preventive services. The *Grant* court held that since a discretionary administrative function was at issue, injunctive relief in the nature of mandamus was inappropriate. In the instant case, however, the plaintiffs are not challenging that discretionary determination. Here, the threshold finding that the plaintiffs are eligible for preventive services is undisputed and in most instances has already been made. The plaintiffs challenge only the failure of the defendants to comply with the mandatory aspects of the law. Social Services Law § 409-a (1) (a) *mandates* that once there is a finding that a child will be placed or continued in foster care unless preventive services are provided, the appropriate social services agency *shall* provide services to a child and his family. Social Services Law § 409-e sets forth a mandatory timetable for preparation of the "assessments" and "plans" which are to be provided.

The significant distinction is that the plaintiffs here are not seeking judicial intervention with respect to the *content* of the plan, which they admit is a nonreviewable discretionary function of the social services agencies. Instead, they seek an injunction only to insure compliance with the nondiscretionary statutory requirements that *a plan* be developed within certain mandatory timetables.

In *Grant v Cuomo (supra)* it was additionally held that once a finding is made that some services are needed, there is no contract-like obligation on the social services agencies, enforceable by plaintiff families in the courts, to provide all available services. The distinction in the instant case is that the plaintiffs are not seeking to enforce a right to any or all particular services or to compel the inclusion of any particular service in a plan, but are seeking only an injunction that the defendants *prepare a plan,* once they have made the threshold determination that services are necessary.

In the leading case of *Klostermann v Cuomo* (61 NY2d 525), a similar distinction was made. In *Klostermann,* mentally ill homeless persons challenged their release from State psychiatric institutions without provision for any service plan or followup, in violation of Mental Hygiene Law § 29.15. That statute, like the laws at issue here, mandated the establishment of written service plans. The plaintiffs in *Klostermann* sought a declaration of their rights and a mandamus order directing the defendants to comply with the law. The governmental defendants argued that judicial intervention would be

inappropriate since an exercise of professional judgment and discretion was involved. The Court of Appeals held that the plaintiffs' claims were justiciable, and that insofar as the statute required the preparation of plans, mandamus was an available remedy to compel that *a plan* be prepared. The court found that injunctive relief would be inappropriate only in regard to the formulation of the discretionary content of those plans. In the words of the court *(supra,* at 540), *"A subordinate body can be directed to act, but not how to act, in a manner as to which it has the right to exercise its judgment".* Accordingly, *Klostermann* supports an affirmance of the limited injunctive relief here at issue and, contrary to defendants' arguments, that issue is justiciable.

By reason of these basic distinctions, *Grant v Cuomo (supra)* is not controlling here. The relief ordered by Justice Wilk—an injunction directing the city to prepare a plan, and denial of a CPLR 3211 motion to dismiss the complaint—is relatively limited in scope and protects the plaintiffs involved from the irreparable injury of needless separation of families, while giving the social service agency latitude to use its administrative expertise and discretion to design a plan which it deems appropriate. Accordingly, the order should be affirmed.

We note that there is language in Justice Wilk's decision which might be interpreted as directing the defendants to promulgate some over-all plan as to how they are to proceed generally in cases of this type. While we do not believe that such broad relief was intended, since it would go beyond the permissible limits delineated in the cited authorities, such as *Klostermann (supra),* to eliminate any confusion we make clear that our affirmance of the injunction is limited to directing that plans be promulgated only for the specific plaintiffs before the court.

With respect to defendants' claim that the case is moot because these plaintiffs are being provided with certain services, it is not clear from the record whether this is in fact so. In any event, we find that Justice Wilk properly denied dismissal of the action on the basis of mootness since the issues raised are of public importance and significance and likely to recur and yet evade review. *(See, Matter of Jones v Berman,* 37 NY2d 42, 57.)

As to the defendants' argument that the case should be dismissed because of the failure of the plaintiffs to exhaust their administrative remedies, Justice Wilk correctly held: " '[t]he exhaustion rule * * * is not an inflexible one.' *(Watergate II Apts. v Buffalo Sewer Auth.,* 46 NY2d 52, 57 [1978].)

Aggrieved parties do not have to exhaust administrative remedies where it 'would be futile * * * or * * * cause irreparable injury' *(supra,* at 57). The city does not deny that plaintiffs are entitled to services. The systematic failures which plaintiffs challenge cannot meaningfully be addressed in an administrative hearing. Indeed, the frustration encountered by plaintiffs even after court orders were rendered on their behalf has been well documented. Thus, resort to administrative remedies would be futile. Additionally, the delays involved in the administrative process might well cause the separation of children from their parents, which constitutes irreparable harm." (138 Misc 2d 212, 222.)

The city additionally challenges the individual cause of action for discrimination based on disability asserted by the F. family. Mrs. F. is a hearing-impaired Haitian woman. The complaint alleges that the defendants, in attempting to provide services to prevent foster care placement of her children, deprived Mrs. F. of benefits solely because of her hearing impairment, in violation of Federal and State prohibitions against discrimination to the handicapped. It is alleged that caseworkers never communicated with her, except in one instance, in sign language, and therefore, having failed to communicate with her, could not have performed any reasonably adequate provision of services. In addition, Mrs. F. alleges that her children were removed from her because of her deafness and inability to hear them. This discrimination claim is sufficiently pleaded to withstand a motion to dismiss at this stage of the action.

Finally, in the *Cosentino* action, an issue was raised as to the State regulation (18 NYCRR 423.4 [b] [4]) which placed a 90-day limit on provision of emergency shelter to homeless people. Justice Wilk found such regulation to be arbitrary and void since a family, once homeless, may need emergency housing for a longer period in order to avert the placement of their children in foster care. However, on oral argument of the appeal and in subsequent communications, the State advised us of the enactment of Laws of 1988 (ch 542) which provides that where a social services official determines that a lack of adequate housing is the primary factor preventing the discharge of a child or children from foster care, preventive services shall include rent subsidies for a period of up to three years. In accordance with this statute, the State Department of Social Services has promulgated emergency rules, amending 18 NYCRR 423.4 to provide special housing subsidies and preventive services to facilitate the discharge of children who

remain in foster care due to an inability to obtain adequate housing. (NY Reg, May 24, 1989, at 34.) In light of the State's recognition that preventive services in the nature of housing assistance require an undertaking of a substantially greater duration in order to avert the placement of children in foster care, Justice Wilk's preliminary injunction against the imposition of an arbitrary 90-day limit on preventive services in the nature of emergency shelter comports with the realities recognized by the State itself, and should not be disturbed at this time.

Accordingly, for the foregoing reasons, the orders should be affirmed. Concur—Murphy, P. J., Sullivan, Kassal, Ellerin and Smith, JJ.