**Yvonne THOMAS, etc., et alia, Plaintiffs,**

v.

**NEW YORK CITY, et alia, Defendants.**

**No. CV–92–1316 (CPS).**

United States District Court,
E.D. New York.

Feb. 5, 1993.

Carolyn A. Kubitschek, New York City, for plaintiffs.

Inga Van Eysden, Mark J. Bunim, Ohrenstein & Brown, New York City, Anthony J. DeMarco, Jr., Brooklyn, N.Y., for defendants.

## MEMORANDUM AND ORDER

SIFTON, District Judge.

This section 1983 civil rights action is based primarily on claims that the infant plaintiffs were physically and ˙emotionally abused while in the care of New York City's foster care system and, as a result, deprived of their liberty interest in maintaining family relations. Currently, all plaintiffs move to amend the complaint and defendants move to dismiss this action on the grounds of lack of subject matter jurisdiction, res judicata, collateral estoppel, abstention, failure to state a claim for which relief can be granted, and the statute of limitations. Certain of the defendants also challenge plaintiff Thomas' standing to bring this suit. Additionally defendants the City of New York, William J. Grinker, Brooke Trent, Hector Rivera, and the New York City Board of Education move to amend their answer to assert a statute of limitations defense and a claim of lack of subject matter jurisdiction.

For the reasons set forth below, the plaintiffs' motion to amend the complaint and the defendants' motion to amend their answer are granted. Also for the reasons hereinafter discussed, the defendants' motions to dismiss this action are denied. However, the Court will abstain from hearing two of the plaintiffs' claims.

The plaintiffs in this case are: Yvonne Thomas ("Thomas"), a mother of ten children; eight of those infant children, each of whom has been a ward of New York ·City's foster care system, namely, Tosca Dean, Nakei McMoore, Cherise McMoore, Michelle McMoore, Alphonso McMoore, Nakinja McMoore, Arthur McMoore, Bertette McMoore (collectively, the "infant plaintiffs"); and Yvonne Thomas' other two infant children Bertram Harris and Montiera Thomas. Thomas sues in her individual capacity and on behalf of all of the other plaintiffs.

The moving defendants are: the City of New York; the New York City Board of Education; William J. Grinker, Commissioner of Social Services; Brooke Trent, deputy Commissioner of Social Services; and Hector Rivera, a foster care employee (collectively, the "City defendants"); Harlem Dowling–West Side Center for Children and Family Services, and certain of its employees, namely Stacey Lawrence, Patricia Lyons, and Eleanor Burgess (collectively, "Harlem Dowling defendants"); and Angel Guardian Home, and certain of its employees, namely Ellen Sheps and Jacqueline McKelvey (collectively, "Angel Guardian defendants").

It is undisputed for purposes of these motions that, during the time that the infant plaintiffs were in foster care, New York City had legal custody of them. Under contract with the city, the Angel Guardian defendants supervised the foster care placement of the eight infant plaintiffs who were in foster care. The Harlem Dowling defendants supervised the foster care placement of four of the infant plaintiffs pursuant to a contract with the city.

Also, named as defendants but not appearing on the current motions are Carole Webb and Ralph Bull. The complaint charges that Webb and Bull physically and sexually abused five of the infant plaintiffs.

The moving defendants all make similar legal arguments in support of their motions to dismiss and for judgment on the pleadings

pursuant to Rule 12(b)(1), (b)(6), and (c) of the Federal Rules of Civil Procedure. Although the Angel Guardian defendants characterize their motion as a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, they do not rely on any documents outside the pleadings, nor have they complied with Local Rule 3(g), which requires submission of a statement of uncontroverted material facts; hence, their motion will be treated also as a motion for judgment on the pleadings or dismissal.

When evaluating defendants' motions for judgment on the pleadings under Rule 12(c) or the motions for dismissal pursuant to Rule 12(b)(6), the Court must take all of the factual allegations in the complaint as true and regard them in a light most favorable to the plaintiffs. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Juster v. City of Rutland,* 901 F.2d 266, 269 (2d Cir.1990). The standard of Rule 12(c) is substantially the same as the standard for a motion to dismiss a claim under Rule 12(b)(6). *Juster,* 901 F.2d at 269; *Gillman v. Burlington Northern Railroad Co.,* 878 F.2d 1020, 1022 (7th Cir.1989).

Background

For purposes of these motions, the following facts are assumed to be true. On July 21, 1983, the City defendants commenced child protective proceedings against Thomas and removed seven of the infant plaintiffs from plaintiff Thomas' custody, placing them in foster care. The City charged Thomas with neglect, alleging that one of the children, Tosca Dean, had been sexually abused by Thomas' paramour. Shortly after her birth in December 1983, Thomas' eighth child, Bertette McMoore, also was removed from Thomas' custody.

All eight children were placed in foster care homes through the Angel Guardian Home, pursuant to contracts with the City and contracts executed between Angel Guardian Home and the foster parents. Five of the children were placed in the home of defendants Webb and Bull. The other three children were placed in a separate foster home.

While under the care of the City defendants and the Angel Guardian defendants these eight infant plaintiffs were subjected to various forms of physical and emotional abuse. The children placed with Webb and Bull were physically beaten and terrorized by Webb and Bull. Bull is alleged to have repeatedly raped the infant plaintiffs, Tosca and Cherise. On numerous occasions, Bull is further alleged to have removed the children from their school prior to the end of the school session and to have taken them home or to motel rooms in order to rape them. The younger children, Michelle and Bertette, are also alleged to have been subject to sexual abuse as they grew older.

At the same time, Angel Guardian Home placed the other three infant plaintiffs, Nakei, Alphonso, and Nakinja, in a separate foster home. These children were moved frequently from home to home, and in one of the homes the three children were subject to beatings and other kinds of abuse, including malnutrition and sexual abuse.

While her children were in the foster care system, Thomas tried to regain custody of them. On February 7, 1984, however, Thomas admitted neglect in a family court proceeding. During subsequent proceedings, the City defendants secured extensions of the children's foster care placement.

In 1985, the Angel Guardian defendants terminated visitation rights between Thomas and two of the children living in the Webb home, Tosca and Cherise. The Angel Guardian defendants also disallowed visitation rights between the infant plaintiffs who were living in the Webb home and the infant plaintiffs who were living with Thomas.

In 1986, the Angel Guardian defendants commenced proceedings in family court to terminate permanently Thomas' parental rights to the five children living at the Webb home. Thomas was not served with notice of the proceeding and consequently did not appear. The family court terminated Thomas' parental rights, and in 1989, Webb formally adopted the five children living in her home.

In September of 1990, Tosca informed Thomas of the physical and sexual abuse to which she and her siblings were subjected in the Webb home. Thomas contacted City

officials and in October 1990, the children were removed from the Webb home. Both Webb and Bull were charged with rape and sexual abuse, and Bull was convicted in February 1991 of raping Bertette and Michelle.

After removing the children from the Webb home and pursuant to a contract between the City and Harlem Dowling–West Side Center for Children and Family Services ("Harlem Dowling"), the City defendants placed the children in the care of Harlem Dowling; Harlem Dowling placed the children in four separate foster homes. While in these homes, the children were again subjected to physical and emotional abuse: Cherise was locked alone in an apartment every Saturday; Arthur and Michelle were assaulted and humiliated by members of their respective foster families.

The Harlem Dowling defendants also disallowed visitation between the siblings and between Thomas and the children in Harlem Dowling's care.

After discovering the abuse in the Webb home in 1990, Thomas also discovered that her parental rights had been terminated. She then applied to the Family Court of the State of New York, County of Kings, seeking to reopen the termination of the parental rights proceeding and to regain custody of the infant plaintiffs who remained in the foster care system. That action is still pending.

On March 20, 1992, the plaintiffs instituted the present action in federal court. At the time of filing the original complaint, three of the infant plaintiffs were still in foster care. In addition to damages, the original complaint sought an injunction ordering the defendants to return these three children to the care and custody of Thomas. However, in September 1992, the City and Harlem Dowling defendants returned these three children to Thomas' custody, and the plaintiffs have withdrawn their request for injunctive relief.

## DISCUSSION

### Motion to Amend Complaint

Plaintiffs move to amend their complaint in order to drop their request for injunctive relief and the cause of action for conspiracy under 42 U.S.C. § 1985 and to add claims that two of the infant plaintiffs, Arthur McMoore and Michelle McMoore, were abused in foster care while under the supervision of the Harlem Dowling defendants and the City defendants. The Angel Guardian defendants and defendants Webb and Bull are not affected by the additional claims.

The Federal Rules of Civil Procedure contemplate liberal pleading and leave to amend pleadings is "freely given when justice so requires." Fed.R.Civ.Pro. 15(a); *see also* Fed.R.Civ.Pro. 8. The decision whether to permit or disallow an amendment of a complaint is within the district court's discretion. *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971), *reh'g denied,* 401 U.S. 1015, 91 S.Ct. 1247, 28 L.Ed.2d 552 (1971). Leave to amend should be permitted in the absence of undue delay, bad faith, or undue prejudice to the opposing party. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *Richardson Greenshields Securities, Inc. v. Lau,* 825 F.2d 647, 653 n. 6 (2d Cir.1987).

Beyond pursuing their motions for judgment on the pleadings or dismissal, none of the defendants oppose plaintiffs' motion to amend the complaint, and there is no apparent reason to deny the motion. Accordingly, plaintiffs' motion to amend their complaint is granted.

### City Defendants' Motion to Amend Answer

The City defendants seek to amend their answer, originally filed on September 11, 1992, to include a subject matter jurisdiction defense and a statute of limitations defense. Because more than twenty days have elapsed since the City defendants served the original answer and because the City defendants have not obtained plaintiffs' written consent to amend the answer, the City defendants must obtain leave of the Court in order to amend their answer. Fed.R.Civ.P. 15(a). Plaintiffs have not opposed this motion, and allowing the amendment does not appear to cause undue prejudice to the plaintiffs. Accordingly, the City defendants' motion to amend their answer is granted. *See Tokio Marine and Fire Ins. Co. Ltd. v. Employers Ins. of*

*Wausau*, 786 F.2d 101 (2d Cir.1986); *Roloff v. Arabian American Oil Co.*, 421 F.2d 240, 242 (2d Cir.1970); *Spier v. Erber*, 1992 WL 230254 (S.D.N.Y.1992); *Gutman v. Equidyne Extractive Indus.*, 769 F.Supp. 121, 124 (S.D.N.Y.1991).

For the purposes of deciding the motions to dismiss and for judgment on the pleadings, the Court deems the complaint and the City defendants' answer to be already amended.

### Motions to Dismiss

■ 1. *Subject Matter Jurisdiction.* Plaintiffs filed their suit under 42 U.S.C. § 1983 and base their complaint on federal statutory and constitutional law. Thus, facially, this Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1343(a)(3) and (4), which provides that federal district courts have original jurisdiction over all suits brought pursuant to section 1983, and pursuant to 28 U.S.C. § 1331, which provides that federal district courts have jurisdiction over all matters which raise issues of federal statutory and constitutional law. However, defendants all argue that this case basically involves a claim based in family law and that according to the domestic relations exception to federal jurisdiction, this Court lacks subject matter jurisdiction over the entire case.

■ The domestic relations exception to federal subject matter jurisdiction is based on the policy consideration that the states have traditionally adjudicated marital and child custody disputes and therefore have developed competence and expertise in adjudicating such matters, which federal courts lack. *See Ankenbrandt v. Richards*, — U.S. —, — – —, 112 S.Ct. 2206, 2214–15, 119 L.Ed.2d 468 (1992); *Ex parte Burrus*, 136 U.S. 586, 10 S.Ct. 850, 34 L.Ed. 500 (1890); *McCullough ex rel. Jordan v. McCullough*, 760 F.Supp. 613, 616 (E.D.Mich.1991). The doctrine also rests on the idea that state courts are peculiarly suited to enforce state regulations and domestic relations decrees involving alimony and child custody particularly in light of the fact that such decrees often demand substantial continuing judicial oversight. *Ankenbrandt*, — U.S. at —,

112 S.Ct. at 2215; *McCullough*, 760 F.Supp. at 616.

Thus, although the domestic relations exception originated in the context of diversity cases, *see generally Ankenbrandt v. Richards*, — U.S. —, 112 S.Ct. 2206 (1992) (discussing history of the domestic relations exception); 13B Wright & Miller, *Federal Practice and Procedure*, § 3609 (2d ed. 1984), some courts have applied the exception in cases based on federal question jurisdiction since the policy considerations which underlie the domestic relations exception may apply with equal force in cases arising under the court's federal question jurisdiction. *See, e.g., McArthur v. Bell*, 788 F.Supp. 706 (E.D.N.Y.1992); *Neustein v. Orbach*, 732 F.Supp. 333 (E.D.N.Y.1990); *Wiesenfeld v. State of New York*, 474 F.Supp. 1141 (S.D.N.Y.1979); *Lhotan v. D'Elia*, 415 F.Supp. 826 (E.D.N.Y.1976).

However, the exception is narrow. In the most recent Supreme Court decision addressing the domestic relations exception, the Court held that the exception "divests the federal courts of power to issue divorce, alimony, and child custody decrees." *Ankenbrandt*, — U.S. at —, 112 S.Ct. at 2215; *see also Phillips, Nizer, Benjamin, Krim & Ballon v. Rosentiel*, 490 F.2d 509, 514 (2d Cir.1973) (Friendly, J.).

The defendants view plaintiffs' case as a disguised attempt by Yvonne Thomas to regain her parental rights previously terminated by the New York family court and to recover custody of her children. If this were so, the domestic relations exception might well apply; but defendants' reading of the complaint in this regard is wrong.

Plaintiffs' complaint sets forth eighteen causes of action against various defendants. These numerous claims can be grouped into five general categories of claims: (1) claims of constitutional violation brought by the infant plaintiffs based on the physical and mental abuse to which they were subjected while in the custody of the state's foster care system; (2) claims of unconstitutional interference with all of the plaintiffs' familial relations; (3) common law tort claims based on the abuse of the infant plaintiffs; (4) claims that the disruption of the plaintiffs' family

violated New York and federal statutory law; and (5) contract claims under New York law. Subsumed into the second category are claims by plaintiff Yvonne Thomas that she was wrongfully deprived of custody of some of her children and that the state wrongfully terminated her parental rights. Plaintiff does not request that this Court issue a decree ordering the state to return to her custody of her children or to restore her parental rights for one thing, because she has had them restored.

The claims grouped in the first category alleging unconstitutional deprivation of substantive due process rights simply do not involve domestic relations issues at all and hence do not implicate the domestic relations exception. *See Doe v. New York City Dep't of Soc. Servs.*, 709 F.2d 782 (2d Cir.), *cert. denied*, 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983); *Doe v. New York City Dep't of Soc. Servs.*, 649 F.2d 134 (2d Cir. 1981); *Yvonne L. ex rel. Lewis v. New Mexico Dep't of Human Servs.*, 959 F.2d 883 (10th Cir.1992); *Taylor ex rel. Walker v. Ledbetter*, 818 F.2d 791, 797 (11th Cir.1987), *cert. denied*, 489 U.S. 1065, 109 S.Ct. 1337, 103 L.Ed.2d 808 (1989); *see also Deshaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 201 n. 9, 109 S.Ct. 998, 1006 n. 9, 103 L.Ed.2d 249 (1989).

█ Likewise, this Court has jurisdiction to address the claims in the second category. Under the federal Constitution, there is a constitutionally protected liberty interest in familial relations. *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *Hurlman v. Rice*, 927 F.2d 74 (2d Cir.1991); *Duchesne v. Sugarman*, 566 F.2d 817 (2d Cir.1977). Moreover, questions of visitation between a parent and her child placed in foster care may implicate this liberty interest. *See, e.g., Winston v. Children and Youth Servs. of Delaware County*, 948 F.2d 1380 (3d Cir.1991), *cert. denied*, — U.S. ——, 112 S.Ct. 2303, 119 L.Ed.2d 225 (1992); *Blair v. Supreme Court of Wyoming*, 671 F.2d 389, 390 (10th Cir.1982). Thus, the adjudication of whether the state's procedure used to separate a parent from a child complies with the constitutional due process requirements is squarely within this Court's

federal question jurisdiction and does not entail any investigation by the federal court into the fitness of the parent to care for the child or the issuance of any decree that the parent must necessarily be reunited with the child; such an adjudication will entail at most a description of what process a state must follow in making determinations to deprive a parent of parental rights and custody of his or her child and in making determinations regarding visitation between them. *See, e.g., Alsager v. District Court of Polk County, Iowa*, 518 F.2d 1160, 1165 (8th Cir.1975).

The remaining categories of claims, the claim that the defendants have violated state and federal statutory laws regarding visitation and custody and that the defendants have breached contract rights of the plaintiff, also clearly do not involve any decree of custody, alimony or divorce, and the Court has pendent jurisdiction over the state causes of action. 28 U.S.C. § 1367.

2. *Res Judicata and Collateral Estoppel.* Defendants next argue, without addressing each of plaintiffs' claims separately, that the plaintiffs' claims are barred by res judicata and collateral estoppel. The defendants argue first on collateral estoppel grounds that the prior proceedings in New York family court conclusively determined the issue of whether the infant plaintiffs may be placed in foster care, the question of visitation, and issues as to the propriety of the termination of Thomas' parental rights. Second, the defendants suggest that the plaintiffs could have raised all of their current claims during the prior state family court proceedings and that the current lawsuit is barred by res judicata. These arguments, however, fail for two reasons: first, the defendants have failed to carry their burden with respect to these affirmative defenses; and second, the doctrine of res judicata does not bar this action in any event.

█ Under 28 U.S.C. § 1738, this Court "must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984). The rules of res judicata and collat-

eral estoppel apply to subsequent actions brought under 42 U.S.C. § 1983. *Migra*, 465 U.S. at 84, 104 S.Ct. at 897–98; *Golino v. City of New Haven*, 950 F.2d 864, 869 (2d Cir.1991).

Under New York law, the principle of res judicata (now commonly referred to as "claim preclusion") applies where "parties in a litigation and those in privity with them" bring a second action and where in the first action a court of competent jurisdiction rendered a judgment on the merits, which is then conclusive of questions of fact and of law necessarily decided in the first action. *Ruiz v. Commissioner of Dep't of Transp.*, 858 F.2d 898, 902 (2d Cir.1988); *Smith v. Russell Sage College*, 54 N.Y.2d 185, 445 N.Y.S.2d 68, 71, 429 N.E.2d 746, 749 (1981); *Gramatan Home Investors Corp. v. Lopez*, 46 N.Y.2d 481, 414 N.Y.S.2d 308, 310–11, 386 N.E.2d 1328, 1330–31 (1979). Thus, the doctrine of res judicata bars relitigation of a claim between the same parties that was already decided, even if in the current proceeding a party raises a new issue in support of their position that was not but could have been raised and decided in the prior action. *Ruiz*, 858 F.2d at 902; *Reilly v. Reid*, 45 N.Y.2d 24, 407 N.Y.S.2d 645, 648, 379 N.E.2d 172, 175 (1978).

Collateral estoppel ("issue preclusion") is a narrower doctrine that bars a party from relitigating an issue which has previously been actually decided against her in a prior proceeding in which she had a fair opportunity to litigate the point fully. *Khandhar v. Elfenbein*, 943 F.2d 244, 247 (2d Cir.1991); *Kaufman v. Eli Lilly & Co.*, 65 N.Y.2d 449, 492 N.Y.S.2d 584, 588, 482 N.E.2d 63, 67 (1985); *Ryan v. New York Telephone Co.*, 62 N.Y.2d 494, 478 N.Y.S.2d 823, 826, 467 N.E.2d 487, 490 (1984). The doctrine of collateral estoppel applies only where an issue was necessarily and conclusively decided in a prior proceeding and where the party being bound by the prior determination had a full and fair opportunity to litigate the issue. *Khandhar*, 943 F.2d at 247.

Since res judicata is an affirmative defense, the party asserting it has the bur-den of showing that the doctrine is applicable. Fed.R.Civ.P. 8(c); *see, e.g., McLaughlin v. Pernsley*, 654 F.Supp. 1567, 1573 (E.D.Pa. 1987); *see generally*, 18 Wright & Miller, § 4405, at 38. Likewise, the party seeking the benefit of collateral estoppel bears the burden of proving that the issues resolved in a prior proceeding and those raised currently are identical. *Khandar*, 943 F.2d at 247–48; *Ottley v. Sheepshead Nursing Home*, 784 F.2d 62, 65–66 (2d Cir.1986); *Ryan*, 478 N.Y.S.2d at 827, 467 N.E.2d at 491.

None of the defendants have met their burden in asserting either preclusion doctrine. Defendants have failed to submit any evidence at all pertaining to the prior state family court proceedings; thus, this Court has not been provided with any evidence on which to base a collateral estoppel determination.

Moreover, to the extent that the prior proceedings in family court dealt with custody or visitation issues, such decisions are not entitled under New York law to the same res judicata effect as accorded to other civil judgments generally because the circumstances justifying custody or deprivation of custody changes over time. *See Robb v. McIntosh*, 99 A.D.2d 571, 470 N.Y.S.2d 954, 955 (3d Dep't 1984) (decisions of family court not entitled to same res judicata effect as other civil judgments); *see, e.g., Brady v. County of Tioga*, 100 A.D.2d 676, 473 N.Y.S.2d 872, 875 (3d Dep't 1984).

In addition, to the extent that the plaintiffs seek damages under their section 1983 claims rather than injunctive relief, res judicata under New York law will not bar the current action because, as the defendants recognize, the New York family court does not have the power to award damages. "Res judicata does not bar a claim based on the same cause of action ... if the forum that rendered the prior judgment 'did not have the power to award the full measure of relief sought' in a subsequent action." *Fay v. South Colonie Cent. School Dist.*, 802 F.2d 21, 29 (2d Cir. 1986) (quoting *Davidson v. Capuano*, 792 F.2d 275, 278 (2d Cir.1986)). The family court's jurisdiction is statutorily defined, and the family court can entertain only those

actions clearly provided for by statute. N.Y. Family Court Act § 115; *Emily K. v. Matthew K.*, 120 Misc.2d 561, 466 N.Y.S.2d 190 (Family Court, Kings County 1983); *see also Borkowski v. Borkowski*, 38 A.D.2d 752, 330 N.Y.S.2d 106 (2d Dep't 1972). In the instant lawsuit, plaintiffs seek monetary damages for the deprivation of their constitutional rights. Thus, the plaintiffs claims are not barred by res judicata. *See Brady*, 473 N.Y.S.2d at 875.

**3.** *Abstention.* Defendants next argue that this Court should abstain from hearing plaintiffs' claims regarding interference with their constitutional liberty interest in being a family because adjudication of this claim would require this Court to address questions about Thomas' parental rights which are currently being addressed in a matter pending before the family court. The Court agrees that abstention in this circumstance is appropriate with respect to two of plaintiffs' claims in this suit: (1) the claim that the defendants violated Thomas' constitutional liberty interest in the custody and visitation of her children after her parental rights were terminated in 1986; and (2) the claim that the defendants violated the infant plaintiffs' constitutional liberty interest in maintaining relations with Thomas after her parental rights were terminated in 1986. The other claim in this category—that the defendants violated the infant plaintiffs' liberty interests in visitation with each other—is discussed separately below. To the extent that plaintiffs have constitutional claims based on conduct of the defendants prior to the time of the termination of Thomas' parental rights and these claims are not barred by the statute of limitations, as discussed below, they may continue to press those claims in this forum.

The defendants invoke the federal doctrine of abstention articulated in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and *Moore v. Sims*, 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979). Under principles of comity and federalism, a federal court must, in certain circumstances, decline to adjudicate a case properly before it. *Younger*, 401 U.S. at 43–45, 91 S.Ct. at 750; *Juidice v. Vail*, 430 U.S.

327, 334, 97 S.Ct. 1211, 1216–17, 51 L.Ed.2d 376 (1977); *see also Moore v. Sims*, 442 U.S. at 423, 99 S.Ct. at 2377. The Second Circuit has established a three-part test for determining when *Younger* abstention should be applied: the district court must determine (1) whether a state civil proceeding is pending at the time the federal litigation is commenced, (2) the magnitude of the state's interest in adjudicating the matter, and (3) whether the plaintiffs are able to raise the same claims raised in the federal action in the state forum. *Christ the King Regional High School v. Culvert*, 815 F.2d 219, 224 (2d Cir.), *cert. denied*, 484 U.S. 830, 108 S.Ct. 102, 98 L.Ed.2d 63 (1987); *see also Temple of Lost Sheep Inc. v. Abrams*, 930 F.2d 178, 182–83 (2d Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 193, 116 L.Ed.2d 153 (1991); *Neustein v. Orbach*, 732 F.Supp. 333, 341 (E.D.N.Y.1990).

In this case, *Younger* abstention is justified on the two claims identified above. As to the first requirement, although the defendants have failed to provide this Court with any information concerning the status of any current proceeding in the state courts, plaintiff Thomas admits that she is pursuing an application in family court to vacate the prior family court order which terminated her parental rights. Thus, the issue of whether Thomas' parental rights were properly terminated is squarely before a state tribunal. Furthermore, Thomas and her children, who are necessary parties to the state proceeding, *see* Family Court Act § 241, apparently have, and certainly may, raise their constitutional due process claims in the family court proceeding as a basis on which the family court may vacate the prior order terminating Thomas' parental rights.

The second element is also present here: states have a compelling interest in cases involving determinations of parental rights and custody. *See Moore*, 442 U.S. at 435, 99 S.Ct. at 2383; *see also Neustein*, 732 F.Supp. at 341; *Reinhardt v. Commonwealth of Mass. Dep't of Social Servs.*, 715 F.Supp. 1253, 1256 (S.D.N.Y.1989); *Donkor v. City of New York Human Resources Admin.*, 673 F.Supp. 1221, 1226 (S.D.N.Y.1987).

Finally, the third requirement is satisfied. Thomas and her children can certainly raise their constitutional claims in the state proceeding. *See, e.g., Neustein,* 732 F.Supp. at 342; *Reinhardt,* 715 F.Supp. at 1256; *see also Moore,* 442 U.S. at 430, 99 S.Ct. at 2380–81. "Clearly the Family Court ... is bound by the Federal Constitution. Thus notions of comity and federalism compel the assumption that the Family Court is competent to hear and thoughtfully consider the [plaintiffs'] constitutional challenges." *Reinhardt,* 715 F.Supp. at 1257; *see Penzoil Co. v. Texaco,* 481 U.S. 1, 14, 107 S.Ct. 1519, 1527, 95 L.Ed.2d 1 (1987); *see also Moore,* 442 U.S. at 426, 99 S.Ct. at 2379.

Finally, plaintiffs have not asserted, nor does the Court find, that this case fits into any of the exceptions to the *Younger* doctrine. That is, there is no indication that the state court proceedings, which were initiated by Thomas, are being conducted in bad faith or that the challenged determinations regarding custody, visitation, and parental rights are patently unconstitutional, or that other extraordinary circumstances exist which pose great, immediate, and irreparable harm to plaintiffs. *See Younger,* 401 U.S. at 54, 91 S.Ct. at 755; *Moore,* 442 U.S. at 432–433, 99 S.Ct. at 2381–82; *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 611, 95 S.Ct. 1200, 1211, 43 L.Ed.2d 482 (1975).

■ Accordingly, the Court will abstain from adjudicating any claims predicated on Thomas' loss of custody or visitation after her parental rights were terminated in 1986; any further action as to these claims is stayed pending the outcome of the family court proceeding. Contrary to the defendants' position, the proper disposition of these claims is not dismissal, but rather a stay pending resolution of the parental status issue by the state court. *See Deakins v. Monaghan,* 484 U.S. 193, 202, 108 S.Ct. 523, 529, 98 L.Ed.2d 529 (1988). In *Deakins,* the Supreme Court said that "even if the *Younger* doctrine requires abstention here, the District Court has no discretion to dismiss rather than to stay claims for monetary relief

that cannot be redressed in the state proceeding." *Id.* 484 U.S. at 202, 108 S.Ct. at 529. In the present case, the plaintiffs cannot recover monetary damages from the proceeding in family court. Thus, applying abstention principles in this case requires a stay of the federal action as to these issues rather than dismissal. *See Louis v. Perales,* 1991 WL 167978 (S.D.N.Y.1991); *see also Kyricopoulos v. Town of Orleans,* 967 F.2d 14, 16 n. 1 (1st Cir.1992); *Prather v. Norman,* 901 F.2d 915, 919 (11th Cir.1990); *Myers v. Garff,* 876 F.2d 79, 81 (10th Cir. 1989); *Ballard v. Wilson,* 856 F.2d 1568, 1571–72 (5th Cir.1988), *reh'g denied,* 861 F.2d 1279 (5th Cir.1988); *Watts v. Burkhart,* 854 F.2d 839, 849 (6th Cir.1988); *Williams v. Hepting,* 844 F.2d 138, 144–45 (3d Cir.), *cert. denied,* 488 U.S. 851, 109 S.Ct. 135, 102 L.Ed.2d 107 (1988); *cf. Temple of the Lost Sheep,* 930 F.2d at 183. *But see Franza v. Abrams,* 695 F.Supp. 747, 752 (S.D.N.Y. 1988); *Obeda v. Conn. Bd. of Registration for Prof. Engineers & Land Surveyors,* 570 F.Supp. 1007, 1011 n. 2 (D.Conn.1983).

■ However, the *Younger* abstention doctrine is not applicable to the infant plaintiffs' claim that their constitutional rights were infringed by the defendants' refusal to allow them to associate and visit with one another. The defendants have not alleged that this claim is or could be raised in the pending family court proceeding, and this claim is not dependent on any determination of the claims involving the relationship between Thomas and her children.

4. *Failure to State a Claim.* Defendants argue that plaintiffs have failed to state a claim under section 1983 with the particularity required under case law.[1] However, the complaint sets forth sufficiently specific factual claims which give rise to the constitutional issues.

■ The pleadings in section 1983 suits must set forth more "particularized" allegations than those normally required by the liberal pleading rules in federal civil cases. *See Finkelstein v. City of New York,*

---

1. The defendants also argue that plaintiffs have failed to state a claim under 42 U.S.C. § 1985. Plaintiffs in their amended complaint have withdrawn that claim. Hence, this Court need not address defendants' arguments on this point.

543 F.Supp. 161, 163 (S.D.N.Y.1982); *Smith v. Ambrogio,* 456 F.Supp. 1130, 1136–37 (D.Conn.1978). *But see Batista v. Rodriguez,* 702 F.2d 393, 397 (2d Cir.1983); *Pitt v. City of New York,* 567 F.Supp. 417, 419 (S.D.N.Y.1983). Courts require more than conclusory and abstract allegations by plaintiffs that their rights have been violated. *See Camarano v. City of New York,* 624 F.Supp. 1144, 1146 (S.D.N.Y.1986); *Finkelstein,* 543 F.Supp. at 163. In this case the complaint alleges that the infant plaintiffs were subjected to various forms of abuse while in the foster care system and in the care of the Harlem–Dowling defendants and the Angel Guardian defendants. Thus the complaint contains particular allegations both about the conduct of the defendants, i.e., the policy or custom of lack of due care, and the harm to the infant plaintiffs, i.e. the abuse. Likewise, the complaint specifically indicates how the plaintiffs' constitutional associational rights and liberty interest in familial relations were violated by the defendants.

 Section 1983 suits against a municipality or its agencies cannot be based on respondeat superior. *Monell v. Dep't of Soc. Servs. of New York,* 436 U.S. 658, 690, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). However, a municipality and its agencies are liable under section 1983 for constitutional deprivations caused by the execution of a policy or custom. *Id.* "A policy or custom may be inferred from acts or omissions of a municipality's supervisory officials serious enough to amount to gross negligence or deliberate indifference to the constitutional rights of the plaintiff[s]." *Villante v. Dep't of Corrections of New York,* 786 F.2d 516, 519 (2d Cir.1986). Moreover, municipal liability under section 1983 can be based on "municipal supervisors' knowing acquiescence in the unconstitutional behavior of their subordinates." *Id; Krulik v. Bd. of Education,* 781 F.2d 15, 23 (2d Cir.1986). And the knowledge of the supervisors may be in-

ferred from a persistent violation of a statutory duty to inquire about the unconstitutional behavior of their subordinates and a failure to prevent the unconstitutional acts. *Villante,* 786 F.2d at 519; *Doe,* 649 F.2d at 145.

 Here, plaintiffs provide enough specific factual allegations of the conduct of supervisory officials of the defendant organizations to support an inference that all defendants were deliberately indifferent to insuring the infant plaintiffs' security and, thus, were acting pursuant to a "custom" or "policy".[2] *See Harris,* 489 U.S. at 388, 109 S.Ct. at 1204; *Ricciuti v. New York City Transit Authority,* 941 F.2d 119, 123 (2d Cir.1991). Although a policy or custom may not, perhaps, be inferred from a single incident involving the plaintiffs, *see City of Oklahoma City v. Tuttle,* 471 U.S. 808, 823, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791 (1985); *Turpin v. Mailet,* 619 F.2d 196, 202 (2d Cir.), *cert. denied,* 449 U.S. 1016, 101 S.Ct. 577, 66 L.Ed.2d 475 (1980); *Anderson v. City of New York,* 657 F.Supp. 1571, 1574–75 (S.D.N.Y. 1987), here the plaintiffs have alleged more than a "single incident." *See, e.g., Curran v. City of Boston,* 777 F.Supp. 116, 121 (D.Mass.1991); *Andujar v. City of Boston,* 760 F.Supp. 238, 242 (D.Mass.1991).

 Furthermore, plaintiffs need not plead more specific allegations about the supervision of the individual defendants. At the pleading stage, civil rights litigants cannot be expected to be able to prove a pattern of misconduct in great detail. It is not appropriate to require civil rights plaintiffs before commencing suit to obtain detailed information regarding a pattern or custom of inadequate supervision. *See generally Oliveri v. Thompson,* 803 F.2d 1265, 1279 (2d Cir.1986), *cert. denied,* 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987); *see also Batista,* 702 F.2d at 397; *Pitt,* 567 F.Supp. at 419.

**2.** The parties dispute whether the appropriate standard in this context is the deliberate indifference standard or a gross negligence standard. *Compare Doe v. New York City Dep't of Soc. Servs.,* 709 F.2d 782, 790 (2d Cir.1983), *cert. denied,* 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1984) (suggesting that standard is gross negligence); *with City of Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). However, this Court need not address this issue in the context of the current motions since the complaint states a claim under the higher standard of deliberate indifference.

■ The Harlem Dowling defendants argue that the constitutional claims of the infant plaintiffs based on the defendants' refusal to permit the siblings to visit one another has no basis in law. Specifically, these defendants point out that no Supreme Court decision or decision by the Second Circuit has recognized a constitutional liberty interest in maintaining familial relations with siblings. The Harlem Dowling defendants base their view on cases where courts have refused to find that siblings may recover for loss of society and companionship under section 1983 where the violation has resulted in a wrongful death. *See, e.g., Ward v. City of San Jose,* 967 F.2d 280 (9th Cir.1991); *Valdivieso Ortiz v. Burgos,* 807 F.2d 6 (1st Cir. 1986); *Bell v. City of Milwaukee,* 746 F.2d 1205 (7th Cir.1984).

The claim that the infant plaintiffs have a constitutional liberty right in maintaining their familial relations with each other is novel, and this Court has not found any case law directly on point. However, some courts have acknowledged that siblings do have a constitutional right to maintain their relationship as a family. *See Trujillo v. Bd. of County Commissioners of Santa Fe County,* 768 F.2d 1186, 1189 (10th Cir.1985).

In light of the novelty of this claim and the fact that the parties have not adequately developed the factual record for it, the Court declines to dismiss this claim on the pleadings and in all likelihood will require a full trial record on which to determine the issue. *See Adato v. Kagan,* 599 F.2d 1111, 1117 (2d Cir.1979); *Shull v. Pilot Life Ins. Co.,* 313 F.2d 445, 447 (5th Cir.1963); *see generally* 5A Wright & Miller § 1357, at 341–43.

■ The City defendants argue that the plaintiffs' causes of action based on state and federal statutes must be dismissed for failure to state a claim. First, the defendants argue that, because the plaintiffs have not identified the relevant statutory provisions in the complaint, these claims fail to state a claim. However, as a general principle, the fact that a complaint does not cite the relevant statutory provision does not require dismissal. *See Thorn v. New York City Dep't of Soc. Servs.,* 523 F.Supp. 1193, 1201 (S.D.N.Y. 1981); *see generally* 5A Wright & Miller at

337. As long as the complaint contains a set of facts for which relief may be granted, it survives a motion to dismiss for failure to state a claim. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

The City defendants next argue, and plaintiffs concede, that there is no private right of action under the Federal Adoption Assistance and Child Welfare Act, 42 U.S.C. §§ 670 *et seq.; Suter v. Artist M.,* — U.S. ——, 112 S.Ct. 1360, 118 L.Ed.2d 1 (1992). Accordingly, count thirteen of the amended complaint, which alleges a statutory cause of action under this statute, is dismissed.

■ The City defendants also argue that, although there is a private right of action under the New York Child Welfare Reform Act of 1979, N.Y.Soc.Serv.Law §§ 409 *et seq., see Martin A. v. Gross,* 153 A.D.2d 812, 546 N.Y.S.2d 75, 77 (1st Dep't 1989), the plaintiffs have failed to allege in particular how the defendants have violated this statute. However, all that is required under federal rules of pleading is a short and plain statement of the claim. Fed.R.Civ.P. 8(a). The complaint satisfies this requirement: it sets forth factual allegations about the conduct of the defendants and claims that this conduct violates New York statutory law.

■ The defendants next argue that plaintiffs' claims based on a theory that plaintiffs are third-party beneficiaries of contracts executed among the defendants must be dismissed as failing to state a claim as a matter of law. However, the question of whether a party is a third-party beneficiary under a given contract is a mixed question of law and fact; that is, the analysis of whether a party is a third-party beneficiary depends in part on the provisions of the contract at issue. Here, the parties have not submitted the contracts, and the Court is unable to determine the issue of whether the plaintiffs are in fact third-party beneficiaries. Accordingly, this claim may not be dismissed on a motion pursuant to Federal Rule of Civil Procedure 12(b)(6) or (c).

5. *Statute of Limitations.* Defendants argue that the statute of limitations bars any of the plaintiffs' claims that accrued prior to

March of 1989, three years prior to the commencement of this litigation. Again, defendants fail to examine the separate claims of the plaintiffs independently and fail to meet their burden with respect to this affirmative defense.

 In New York, a three-year statute of limitations applies to claims brought under 42 U.S.C. § 1983. *Owens v. Okure,* 488 U.S. 235, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989); *Pauk v. Bd. of Trustees,* 654 F.2d 856, 861 (2d Cir.1982), *cert. denied,* 455 U.S. 1000, 102 S.Ct. 1631, 71 L.Ed.2d 866 (1982). The statutory period for bringing a section 1983 claim begins to run upon accrual of the claim, i.e., when the plaintiff knows or has reason to know of the injury which underlies the action. *Pauk,* 654 F.2d at 859; *Singleton v. New York,* 632 F.2d 185, 191 (2d Cir.1980), *cert. denied,* 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981). In borrowing the states' statutes of limitations for section 1983 actions, federal courts also borrow applicable tolling provisions. *See Board of Regents v. Tomanio,* 446 U.S. 478, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980). New York law tolls applicable statute of limitations when the plaintiff is incapacitated by infancy. N.Y. CPLR § 208 (McKinney's 1990). An infant is defined as one who has not attained eighteen years of age. N.Y. CPLR § 105(j) (McKinney's 1990).

Thus, the infant plaintiffs' claims are not barred by the statute of limitations. The oldest child, Tosca, is eighteen, and thus the action was timely commenced with respect to these claims.

 Thomas also states a derivative tort claim for loss of services based on the abuse suffered by the infant plaintiffs while in the foster care system. The applicable statute of limitations for such claims is three years. N.Y. CPLR § 214. The infancy tolling provision does not apply to Thomas' derivative claims because the infancy tolling provision only applies to plaintiffs who themselves are under a disability. *See Umlauf v. County of Erie,* 58 A.D.2d 991, 397 N.Y.S.2d 487 (4th Dep't 1977); N.Y. CPLR § 208, practice commentary, C208:1. But the statute of limitations on Thomas' derivative claims may be tolled by the continuing harm doctrine. A claim does not accrue under New York law until the continuing wrong has ceased. *See Boland v. State,* 30 N.Y.2d 337, 333 N.Y.S.2d 410, 413, 284 N.E.2d 569, 572 (1972); *Borgia v. City of New York,* 12 N.Y.2d 151, 237 N.Y.S.2d 319, 187 N.E.2d 777 (1962). In this case, the complaint alleges that the infant plaintiffs were subject to repeated abuse that continued until the children were returned to Thomas' custody; moreover, Thomas appears on the pleadings to have had extremely limited access to her children and not to have learned of much of the abuse until the fall of 1990. The continuing wrong in this case may consist of the continual negligent oversight by the defendants over the care of the infant plaintiffs while the children were in the defendants' custody—a wrong that did not end until 1990 for some of the infant plaintiffs and 1992 for others. Thus Thomas' derivative tort claim based on the abuse of the infant plaintiffs may well have been brought within the three-year statute of limitations.

The same must be said for Thomas' claims of unconstitutional disruption of familial relations between Thomas and her children. To the extent that plaintiffs claim that their constitutional rights in maintaining their familial relations were violated prior to 1986, these claims may be barred by the three-year statute of limitations. But plaintiffs argue that the statute of limitations should be tolled because the wrong continued up until the recent past. Whether it has or not cannot be determined on the pleadings.

 6. *Notice of Claim.* The City defendants claim that the plaintiffs' claims based in common law tort against the city are barred because the plaintiffs failed to file a notice of claim as is required under New York's General Municipal Law § 50–e. However, this requirement does not apply in this case.

Under General Municipal Law § 50–e(8), the notice of claim requirement does not apply to "claims against public corporations by their own infant wards." Gen.Mun.Law § 50–e(8); *see Gibbs v. City of New York,* 23 A.D.2d 665, 257 N.Y.S.2d 242 (2d Dep't 1965). The statutory exception to the requirement

of the notice of claim was enacted after the decision in *Gibbs*. There the court pointed out that "[w]here ... the prospective defendant (the city) and its own agency were the only parties reasonably situated to ascertain the existence of the claim and to prosecute the claim, it would be an idle gesture to require that they file a notice of claim against themselves." *Gibbs*, 257 N.Y.S.2d at 242.

Section 50–e(8) applies in this case; in fact, the circumstances of this case are an archetypal example of the applicability of this section. At all the relevant times, the infant plaintiffs were under the care of the City and its agencies, and Thomas had restricted access to them. In these circumstances, the infant plaintiffs' were "wards" of the defendants in the sense that no independent guardian was able to look after their interests beside the defendants themselves. *Cf. Grover ex rel. Grover v. Martone*, 127 Misc.2d 40, 485 N.Y.S.2d 191 (Sup.Ct. Chemung County, 1985).

■ 7. *Remaining Claims*. Some of the defendants suggest that Thomas cannot bring claims on behalf of the infant plaintiffs because her parental rights have been terminated. However, Thomas may sue as a "next friend" of the infant plaintiffs. Fed.R.Civ.P. 17(c); *Ad Hoc Comm. of Concerned Teachers v. Greenburgh # 11 Union Free School Dist.*, 873 F.2d 25, 30–31 (2d Cir.1989). Rule 17(c) of the Federal Rules of Civil Procedure provides in part:

> An infant or incompetent person who does not have a duly appointed representative may sue by next friend or by a guardian *ad litem.*

Fed.R.Civ.P. 17(c). Here, the defendants do not allege that the infant plaintiffs have a "duly appointed representative." All of the infants are currently in the custody of Thomas and nothing indicates that Thomas is motivated in representing the infant plaintiffs by anything other than "a sincere desire to seek justice on the infant[s]' behalf." *Ad Hoc Comm. of Concerned Teachers*, 873 F.2d at 31.

■ The Angel Guardian and Harlem Dowling defendants argue that Thomas lacks standing to bring derivative claims based on the abuse of the infant plaintiffs because Thomas does not support them. *See Clough v. Bd. of Education of Spencerport Central School Dist.*, 56 A.D.2d 233, 392 N.Y.S.2d 170, 173 (4th Dep't 1977) (noting that a "parent's derivative action to recover ... expenses is grounded upon the parental obligation of support"). However, the amended complaint reveals that Thomas does have custody of all the infant plaintiffs and thus has the obligation to support them. Therefore, Thomas can properly maintain a derivative claim under a state tort theory.

■ However, under the law of New York, Thomas cannot recover for the "loss of the child's companionship or society." *Martell v. Boardwalk Enter., Inc.*, 748 F.2d 740, 754 (2d Cir.1984); *White v. City of New York*, 37 A.D.2d 603, 322 N.Y.S.2d 920 (2d Dep't 1971); *Foti v. Quittel*, 19 A.D.2d 635, 241 N.Y.S.2d 15 (2d Dep't 1963). Therefore, Thomas' common law claims to recover these damages are dismissed.

The City defendants argue that in order to proceed in this Court on any of plaintiffs' claims, this Court must appoint a guardian *ad litem* for the infant plaintiffs and disqualify the plaintiffs' counsel from representing all of the plaintiffs in this action. This argument rests on the premise that this case involves a claim by Thomas to custody of and parental rights with respect to the infant plaintiffs and that consequently the infant plaintiffs may have interests in conflict with Thomas. However, the premise does not hold true, so the argument fails. As discussed above, this Court is not called upon in this case to decide either who should have custody of the infant plaintiffs or whether Thomas' parental rights must be restored; moreover, to the extent the complaint raises claims regarding Thomas' parental rights, this Court has at present abstained under the *Younger* doctrine from addressing such claims. The defendants' request for an appointment of a guardian *ad litem* and to disqualify the plaintiffs' counsel is, accordingly, denied at this time.

Finally, it should be noted that the Harlem Dowling defendants have raised an issue of whether some of the individual Harlem Dowling defendants are protected by a qualified

immunity. This Court declines to address this issue, however, because the Harlem Dowling defendants raised this issue for the first time in a reply memorandum of law and thus did not provide adequate notice of this claim to the plaintiffs. Fed.R.Civ.P. 7(b)(1).

In sum, plaintiffs' motion to amend the complaint and the defendants' motion to amend their answer are granted. Defendants' motions to dismiss this action are denied; however, plaintiffs' common law claims to recover for the loss of a child's companionship or society and their claim under the Federal Adoption Assistance and Child Welfare Act are dismissed. Plaintiffs' claims of violation of their constitutional liberty interest in the parent-child relations are stayed. The City defendants' motion to appoint a guardian *ad litem* and to disqualify plaintiff's counsel is denied.

Plaintiff is directed to serve and file an amended complaint in accordance with this opinion within thirty days of the date hereof.

SO ORDERED.